## CHICAGO & EASTERN ILLINOIS R. R. CO.
### v.
### ISAAC W. HOLLAND.

1. NEGLIGENCE—COLLISION.—The court is of opinion that the employes in charge of defendant's train were guilty of a want of ordinary care in that they placed their train on the Rock Island track not only in violation of the express rules of that company, but under circumstances which manifestly exposed the two trains to imminent danger of collision.

2. DAMAGES.—Damages for $25,000 held, not excessive, where the preponderance of the evidence showed that plaintiff, in consequence of his injury, had become a hopeless and almost total wreck.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed March 8, 1886.

Mr. WILLIAM ARMSTRONG, for appellant.

Messrs. G. W. & J. T. KRETZINGER, for appellee.

BAILEY, P. J. This was an action on the case, brought by Isaac W. Holland against the Chicago & Eastern Illinois Railroad Company, to recover damages for a personal injury, caused, as is alleged, by the negligence of the defendant's servants. The plaintiff, at the time he was injured, was in the employ of the Chicago, Rock Island & Pacific Railway Company, as a conductor in charge of a suburban passenger train running on one of the lines of that company between the city of Chicago and South Chicago. It appears that from South Chicago west for several miles the track of the Chicago &

Western Indiana Railway Company over which the defendant runs its trains to and from Chicago, is parallel with and but a few feet distant from the track of the Rock Island Company, and that at a point some two miles west of South Chicago, both tracks are intersected, nearly at right angles, by the track of still another railroad running to Pullman, the last mentioned track being also used by the defendant for running its trains to that place.  About a quarter of a mile east of the Pullman crossing is a side track of the Western Indiana Company turning off and running a considerable distance to the north to certain stone quarries, and known as the quarry track.   The Pullman track was connected with the track of the Rock Island Company by a side track known as a "Y," but had no such connection with the Western Indiana track. That track, however, was connected with the Rock Island track by a side track or "cross-over," running easterly from the switch communicating with the quarry track.   It thus became possible for the defendant's trains to reach the Pullman track by crossing over on the Rock Island track, running thence west to the Pullman "Y," and over that to the Pullman track.

For a year or more prior to the plaintiff's injury, the defendant had used the Rock Island track in the way above indicated for transferring its freight trains to and from the Pullman track, under a license from the Rock Island Company, such license being granted upon the express condition that the defendant's trains should be kept out of the way of the Rock Island passenger trains, the defendant's trains and the men in charge of the same being subject to a rule of the Rock Island Company, which provided, in substance, that passenger trains should not be delayed, and that freight trains should not be moved out onto the main track in advance of passenger trains due or in sight, and in the event of their occupation of the main track when passenger trains were delayed, they should, on the appearance of such trains, be run to the nearest siding, or, if necessary, onto the other main track, and that in all cases such freight trains should be properly protected.

The usual trip of the plaintiff's dummy train was, from

Chicago, past the Pullman crossing, to South Chicago, thence returning about half a mile to a "Y" communicating with a track running south, thence by that track to Irondale, thence back to South Chicago, thence west, past the Pullman crossing, to Chicago. The time usually occupied in making that part of the trip east of Pullman crossing was thirty-five minutes.

On the 16th day of February, 1883, the date of the injury, the plaintiff reached Pullman crossing on his way east a few minutes late. The day was dark, there being a dense fog which rendered it impossible to distinguish objects at a distance of more than one hundred or one hundred and fifty feet. One of defendant's freight trains, consisting of between twenty and thirty cars, was standing on a side track, awaiting an opportunity to go over to the Pullman track, the engine of that train being on the "cross-over" within about fifty feet of the Rock Island track. After the plaintiff passed, the defendant's train was moved out onto the Rock Island track, and started back toward the Pullman crossing. No precautions were taken to warn those in charge of the dummy train that the track was being thus obstructed. While the defendant's train was being thus moved, the conductor of the train was met by employes in charge of a Rock Island freight train then standing on a side track awaiting the return of the dummy train and expostulated with for attempting to get over to the Pullman track in advance of the dummy train, they telling him that the time was too short and that he would get caught. He admitted that he had sent out no signal and did not think it would be necessary to do so, but remarked that if his engine had steamed properly he would already have been out of the way. The plaintiff being late, omitted, on his return from Irondale, to go back to South Chicago, which made his trip several minutes shorter than usual. He accordingly reached the place occupied by the defendant's train just after that train had commenced moving back toward the Pullman crossing. The fog prevented his engineer from seeing the defendant's train until within a few feet of it, and a collision thereupon took place by which the

plaintiff, who at the time was in one of the passenger cars, was thrown against the back of a seat and, as is claimed, seriously and permanently injured.

We think the jury were clearly warranted in finding that the employes in charge of the defendant's train were guilty of a want of ordinary care, and even of gross negligence. They placed their train on the Rock Island track not only in violation of the express rules of that company but under circum-tances which manifestly exposed the two trains to imminent danger of collision.   The least that could be required of them under these circumstances was, to send out proper signals to warn those in charge of the plaintiff's train, which they knew would be due in any event in a very few minutes, of the danger of collision, and such precaution was especially imperative in view of the dense fog which prevented those in charge of the approaching train from seeing the obstruction in time to avoid it.   The negligence of the defendant's servants, in any light in which we are able to view it, was highly culpable, and the jury were justified in finding the defendant guilty.

The amount of damages assessed by the jury, and for which the plaintiff had judgment, was $25,000, and it is urged with great earnestness that said damages are excessive.   A very large portion of the evidence contained in the voluminous record relates to the nature and extent of the plaintiff's injuries, and there seems to be a very wide difference of opinion, especially among the physicians who were examined as witnesses, as to the nature, severity and permanence of said injuries.   Several physicians, who are doubtless men of high respectability in their profession, and who had made personal examination of the plaintiff with greater or less care, express the opinion that little, if any, portion of the debility under which the plaintiff is laboring, is attributable to the injury complained of.   A large amount of evidence was given, however, by both professional and non-professional witnesses, which tends to show that in consequence of said injury, the plaintiff has become a hopeless and almost total wreck, both physically and mentally.   The jury have believed the latter

class of witnesses, and the judge who tried the case has lent his official sanction to their conclusion by denying the defendant's motion for a new trial. After having attentively examined the entire record, we are inclined to adopt the same view as to the preponderance of the evidence on this question, and are of the opinion that the jury were justified in accepting the evidence of the plaintiff and his witnesses in relation to the nature and extent of the plaintiff's injuries as the truth.

The plaintiff at the time of his injury was a healthy robust man of the age of thirty years. He had been for several years in the employ of the railroad company, and by the successful and satisfactory performance of his duties, he had risen through the subordinate grades of employment to that of conductor. He was a married man having a young wife, but no children. The injury to his spine occasioned by the collision has resulted, according to the testimony of his witnesses in great and incurable nervous prostration and debility. This condition has manifested itself in continual suffering, in great nervous excitability and painful susceptibility to the least disturbance, in the loss of appetite and the power to digest and assimilate food, and great emaciation, and an almost complete and permanent loss of the use of his feet and lower limbs, in the destruction of his genital powers and the gradual failure of his mind and memory. This state of things is shown not only to be permanent, but progressive, and leaves no hope of recovery or even of amelioration.

While it is true that courts can not and should not attempt to adequately compensate injuries of this character, and that juries should be kept within reasonable limits, we are unable to say, in view of all the circumstances of this case, that the verdict of the jury should not be sustained. We know of no rule by which it can be held that the jury have been actuated by passion or prejudice, or that they have given to the plaintiff a measure of compensation which, in view of the nature and extent of the injury he has suffered, can be said to be unreasonable.

Several months prior to the trial the defendant moved for a rule on the plaintiff requiring him to submit his person to

the examination of certain physicians and surgeons, which motion was denied, and said decision is assigned for error. The rule seems to be settled in this State that in cases of this character the court has no power to make and enforce a rule compelling a plaintiff to submit his person to the examination of physicians.   Parker v. Enslow, 102 Ill. 272.   The motion was properly overruled.

But it appears that notwithstanding the denial of the motion, the plaintiff in fact afterward, on various occasions, voluntarily submitted to an examination of physicians employed by the defendant for that purpose, and that he never declined such examination except on one or two occasions, where the physician employed to make the examination was for some reason personally obnoxious to him.   In this way the defendant has had all the advantage it could have had if its motion had been granted.

Other errors are assigned which we have duly considered, but do not find sustained. There being in our opinion no error in the record, the judgment will be affirmed.

Judgment affirmed.