# Chicago & Alton Railroad Company

## v.

# Theodore Fisher.

*Railroad—Negligence—Failure to Provide Proper Accommodations for Excursion—Personal Injuries—Jury—Competency—Examination of—Evidence—Instructions—Damages—Practice.*

1. It is proper upon the examination of a juror that he should be informed of the rule of law governing the application of a question asked, and if the same is asked to puzzle or trap him into disqualifying himself as a juror, it should not be allowed.

2. When it appears from the examination of a juror that he has neither formed nor expressed an opinion, and has no prejudice or bias against either of the parties for any cause whatever, and can sit impartially and decide the issue involved in the case according to the evidence, such a person is a competent juror.

3. The jury may, in proper cases, consider, in the estimation of damages, pain, suffering and the loss of limbs.

4. Whether, under a given set of circumstances one should, in the exercise of due care, have done a particular thing, is a question for the jury.

5. This court holds that the defendant company was guilty of negligence in not providing more ample accommodations for passengers going upon a certain excursion, and was responsible for the necessity of plaintiff's riding upon the steps of the car upon which he was conveyed.

6. In the case presented, this court holds the verdict for the plaintiff for $16,000 to be reasonable, in view of the injuries suffered by him through defendant's negligence.

[Opinion filed May 24, 1890.]

Appeal from the Circuit Court of Menard County; the Hon. G. W. Herdman, Judge, presiding.

Messrs. N. W. Branson and Brown & Kirby, for appellant.

Messrs. CAMERON & HUGHES and CHARLES NUSBAUM, for appellee.

CONGER, J. This case was before us at the November term, 1888, and an opinion was filed February 21, 1889, reversing the judgment, and remanding the case for a new trial. The cause was again tried in the Circuit Court of Menard County, resulting in a verdict and judgment in favor of appellee, for the sum of $16,000.

The declaration contained three counts, the substance of which is set forth in the former opinion of this court as follows: The first alleged that on the 18th of August, 1886, the defendant ran an excursion train between Petersburg and Ashland, and plaintiff became a passenger thereon; and on the return journey defendant negligently permitted the train to become overcrowded, and by reason thereof the plaintiff, while exercising due care, was, by the pressure of the persons on the platform and steps of the car, unavoidably crowded off and thereby injured. The second count substantially states the same condition of the car, and alleges that by reason thereof plaintiff was unable to stand on the platform and unavoidably fell off and was thrown against a heavy truck, etc. The third avers the defendant had noticed an unusual number of persons would take the train, and advertised it would carry all persons at reduced rates; that plaintiff became a passenger; that defendant failed to provide adequate room for the passengers and suffered the train to be overcrowed and also carelessly permitted a heavy truck to be on the depot platform at Petersburg, directly in the way of persons who might alight from the train, and that by reason of the overloaded condition of the train, the plaintiff, while exercising due care, was thrown from the car and was dragged against the said truck, whereby he was injured.

The principal reasons for reversing the judgment when the case was here before, were, first, that the court in that trial "erred in permitting proof of the general understanding in the vicinity as to the crowd that was expected at Ashland, and that printed invitations had been issued by a committee

to all ex-soldiers, and that printed posters had been seen in public places about the town of Petersburg," and we said in reference to this proof:

" The object of this evidence of course was to bring knowledge to the company of the extent of the crowd to be expected. We think it was too remote and should have been excluded, unless it was also shown that the company or its agents knew of the invitations or of the posters."

The occasion was a soldiers' reunion at Ashland, which is the second station south of Petersburg, held on the 18th of August, 1886.

On the present trial it was shown by stipulation that James Charlton was the general passenger and ticket agent of appellant, and as such caused the following circular to be sent to each ticket agent of appellant at the various places mentioned in said order, and that excursion tickets were sold according to its terms:

"Chicago & Alton Railroad Company, General Passenger and Ticket Department, Circular 1,577.

Chicago, August 11, 1886.

To ticket agents at Bloomington, Roodhouse and all stations between these points and Ashland.

114th Illinois infantry volunteer reunion, at Ashland, Illinois, Wednesday, August 18, 1886.

For above sell excursion tickets from your station to Ashland and return for one fare and one-third for round trip.

Sell excursion tickets Wednesday, August 18; make going coupon good on day of sale only, and returning coupon good up to and including Thursday, August 19, 1886.

Examine stock of excursion tickets and if you have not a sufficient supply, send application to this office.

Advise your superintendent if you are likely to have a large number of excursionists from your station so that necessary cars may be provided.

Posters advertising this excursion will be sent you by the committee. Have them put in the most prominent positions in and around your depot and other public places and send at least one to each newspaper and post-office in the territory

tributary to your station; in free notices in the press and in every other way make this excursion widely known and secure a large travel.

On all occasions of excursions, take care to give posters a wide distribution in the surrounding country.

(Signed)      J. CHARLTON,
G. P. & T. A."

It thus appears the company not only had full knowledge of the time and character of the excursion, but was itself actively engaged—by preparing and sending posters to its agents to be by them placed in the most prominent positions in and around the depots and other public places, to be sent to all the newspapers and post-offices in the territory tributary to the several stations, and by free notices in the press, and in every way making this excursion widely known— in trying to secure a large travel.

The various agents were also required to advise their superintendent of the number of excursionists likely to go from their station, so that necessary cars could be provided, and presuming that these agents did their duty and obeyed this command of their superior officer it would seem that the company had unusual facilities for estimating the number of cars that would probably be required to accommodate the travel—to meet the extraordinary travel which it had done its utmost to bring about. It added one extra coach to the regular train, consisting of two other passenger coaches going south from Petersburg to Ashland in the morning, and to return the passengers in the evening, the regular train was used, consisting of three passengers coaches, a dining car and a sleeper. The crowd of people returning to Petersburg in the afternoon was so great that the platforms and aisles were filled on some, if not all the cars, except the sleeper and the dining car.

We do not care to enter into an examination of the evidence upon this point, but are satisfied that it shows the company was guilty of negligence in not providing more ample accommodation, and was responsible for the necessity of appellee's riding as he did, upon the steps of the platform.

C. & A. R. R. Co. v. Fisher.

The other ground upon which we found it impossible to sustain the judgment when the case was here before, were certain erroneous instructions, which do not appear in this record.

The first objection made by appellant which we shall notice, is, that the Circuit Court erred in not permitting it to ask of certain jurors the following question: "If taken upon this jury, and the evidence were equally balanced upon both sides, just as much one way as the other, which way would you decide?"

These jurors were fully examined, and answered that they had no knowledge of the facts of the case, were in no way prejudiced against either of the parties; that they knew of no reason why they could not try the case fairly and impartially; had no prejudice against railroads in general or appellant in particular; that if accepted as jurors they would take the law as announced by the court, and follow it, and would not assert their opinion as to the law against the opinion of the court as laid down in the instructions; and they could and would deal just as fairly with appellant as with appellee, and that the fact that appellant was a corporation would not affect them in the slightest degree, and the three were then accepted by appellant.

Juror Groisboll was accepted on the first panel, juror Burfiend in the second, and juror Comningoer in the third, and up to the acceptance of the second panel, appellant had not used any peremptory challenge, and used one only upon the third panel of four jurors, and when the jury was complete, appellant had two peremptory challenges left.

The record shows that when the question above referred to, i. e., "If taken upon this jury and the evidence were equally balanced upon both sides, just as much one way as the other, which way would you decide?" was asked of these jurors, it was objected to by counsel for plaintiff, unless the counsel for appellant would add the explanation that in such a case as that the juror would be bound under the law to find for appellant, which addition to the question was refused by counsel for appellant, whereupon the court sustained the objection.

We think the holding of the Circuit Court was right.

If parties will insist upon putting questions to a juror requiring for their proper answer a knowledge of the rules of law about which the juror may be entirely ignorant, it would be strange indeed if the court could not protect him by insisting that he shall, at the time, be informed what the law would require of him under such circumstances.

If asked with an honest purpose to know whether the juror is free from bias or prejudice so that he may give to evidence its proper weight, those asking it would desire that the juror should know the rule of law governing its application; and if asked as a puzzle or trap to get one ignorant of what his duty would be under such circumstances to disqualify himself as a juror, the question should not be allowed.

If the question had been asked, and answered contrary to the rule of evidence, these jurors clearly show themselves by the rest of their examination to have been fair, unprejudiced jurors, and as such were accepted by appellant at a time when its peremptory challenges were not exhausted.

We think the ruling of the Circuit Court fairly within the spirit and meaning of the principles laid down in Richmond v. Roberts, 98 Ill. 472, and Spies v. The People, 122 Ill. 1.

. These latter cases, as we understand, so far modify the case of C. & A. R. R. Co. v. Adler, 56 Ill. 344, as to hold, when it appears from an examination of the juror that he has neither formed nor expressed an opinion, and has no prejudice or bias against either of the parties for any cause whatever, and can sit impartially and decide the issue involved in the case according to the evidence, such a person is a competent juror.

The most difficult question is one of fact, i. e., was appellee forced from the train by reason of its crowded condition, or did he voluntarily step from it. We have examined all the evidence bearing upon this question with that care which its importance demands. It is very conflicting, and under such circumstances we do not feel authorized to say that the jury were not warranted in the conclusion they reached.

One of the recent expressions of the Supreme Court upon

C. & A. R. R. Co. v. Fisher.

this subject is found in Buchanan v. McLennan, 105 Ill. 59, where it is said : "The evidence is voluminous, and is conflicting, and portions seem irreconcilable. The jury had before them and saw the witnesses. They had every and superior means to ours to weigh, compare and properly estimate the value of the evidence. They could judge by the intelligence and demeanor, as to the proper weight to be given to the testimony of all the witnesses. Of these means we are deprived. The judge who tried the case was satisfied with and acted upon the verdict. Had it not been satisfactory to him, the plain requirement of duty would have compelled him to set it aside, but failing to do so, we must presume he was satisfied with the finding. Nor does a careful consideration of the evidence show that the finding is clearly against its weight. * * * In this conflict it was within the province of the jury to fully consider, weigh and reconcile it, so far as that could be done, and when they were unable to do so, then to reject such portions as they believed were not entitled to credence. We must presume that in the discharge of their duty they did this, and under well and long established rules of practice we are unable to interfere." See also, Varner v. Varner, 69 Ill. 445; C., B. & Q. v. Lee, 87 Ill. 454; Bishop v. Busse, 69 Ill. 403.

It would serve no good purpose to undertake to analyze and comment upon the testimony upon this question in detail, for it would be impossible to present the relative force of the conflicting portions unless it were set out at length. Three juries have found in favor of appellee upon this question, and in the language of the opinion quoted, *supra*, "We must presume that in the discharge of their duty they did this, and under well and long established rules of practice, we are unable to interfere."

A lengthy criticism is indulged in as to nearly all the instructions. We shall notice only a portion of them. The first three given appellee are as follows:

1. The court instructs the jury for the plaintiff. The plaintiff, as a passenger, was not required by law to exercise extraordinary care, or manifest the highest degree of pru-

dence to avoid injury. All the law required of him while traveling as a passenger was that he should exercise ordinary care and prudence.

2. By ordinary care the law means such a degree of care, under the circumstances and in the situation in which the plaintiff was placed, so far as that may be shown by the evidence, as an ordinary prudent man would exercise under like circumstances and in the same situation to avoid apparent danger.

3. If the jury believe from the evidence that the plaintiff, while in the exercise of ordinary care, was injured by or in consequence of the negligence of the defendant, as charged in the declaration, or in either one of the counts thereof, then you should find the defendant guilty.

It is objected that "the evident tendency of the first was to relieve appellee of the additional care placed upon all who took extra hazardous positions, and relieved him before the jury of the duty of exercising a care proportioned to the apparent danger of the situation." We think the objection not just. The first instruction laid down the duty of ordinary care and prudence in a general way, and is followed by the second, whereby the jury are told that ordinary care in this case means such a degree of care, under the circumstances and in the situation in which appellee was placed, as an ordinary prudent person would exercise under like circumstances. Thus directing the attention of the jury to the particular circumstances of the case, and leaving them to say whether appellee did or not, under all the circumstances and the facts surrounding him at the time, act with that caution and care that should be expected of a reasonably careful man under like circumstances.

Neither does the third assume, as contended, "that appellant was guilty of negligence." It is only a strained construction that would give it such a meaning. To an ordinary mind the phrase, "If the jury believe from the evidence," qualifies the entire sentence.

The sixth, seventh and eighth are as follows:

6. The jury are the *sole* judges of the credibility of each

and every witness in this case, and of the weight to be given to the evidence of the witnesses, each and all of them.

7. The jury are not necessarily bound to believe anything to be a fact because a witness has stated it to be so, provided the jury believe from the evidence that such witness is mistaken, or has sworn falsely as to such fact.

8. That the preponderance of evidence may not depend entirely upon the number of witnesses testifying on either side of the case.

Objection is made to the use of the word "sole" in the sixth instruction; and it is said upon a motion for a new trial or in an Appellate Court it is not true that the jury are the sole judges of the weight of the testimony. This is true, but it is equally true that for all purposes of the trial and during its progress the statement can not be contradicted, while we are inclined to think it would be better to omit the word; its use would not be such error as to vitiate the verdict.

As to the seventh and eighth we see no substantial objection. It is objected to the tenth instruction that it contains as one of the elements of damage, the pain and suffering endured by appellee.

Counsel say: "It is true that it is a proper element to be considered in the determination of the damages resulting from the injury at large, but it is not, we think, the design of the law to allow a jury to arbitrarily determine what is, and allow an independent compensation for pain and suffering. There is no standard by which it can be measured; it has no value, and is not the subject of ascertainment in a judicial sense. * * * No one would sell suffering, and if one could be found so depraved, there is no way to ascertain its market value." The language of the instruction is:

10. If you find the issues for the plaintiff and find the defendant guilty, then you may assess the plaintiff's damages at such sum of money as will compensate him for: First. His necessary expenses in and about being treated for and cured of his injuries. Second. The damage sustained in his business. Third. The pain and suffering endured by him.

Fourth. For any permanent injuries sustained by him, so far as all these things (if proven) may be shown by the evidence.

Strictly speaking, there can be no compensation for pain and suffering, neither can the value of a limb be determined in money. There is no market value for either, nor would any one seek to suffer the one, or the loss of the other, for a money compensation. But this does not take from the jury in proper cases the right to place a value upon either or both. We see no force in the objection.

Fifteen instructions presented by appellant were given without any modification, and they seem to have presented the law of the case fairly to the jury upon appellant's theory of the case.

. Fifteen additional instructions were also given for appellant with modifications made by the court, of which modifications complaint is made.

These instructions with their various modifications are too long to be quoted at length, but number twenty-eight, which follows, will give a fair idea of such modifications. The words in italics were inserted by the court.

"28. If the jury believe from the evidence that the plaintiff had an opportunity to take a seat in the car at Ashland, and that he voluntarily *and negligently* abandoned his opportunity to take such a seat there, and voluntarily *and negligently* took a position on the platform or steps of the car, and maintained such position until he reached Petersburg, and if the jury further believe from the evidence that the plaintiff before reaching Petersburg could by the exercise of ordinary care have found sufficient standing room inside the car, and that he would there have been safer, then the plaintiff can not recover, and the jury should find for the defendant." (Given.)

The vice of this instruction as asked, is in assuming as it does that certain acts upon the part of appellee would constitute negligence, and it is only necessary for us to repeat what was said upon the same subject when the case was here before:

" It is a familiar rule that the jury should be left free to

determine questions of fact, and that what is or is not negligence is such a question.   Whether under a given set of circumstances one should in the exercise of due care do or refrain from doing a particular thing, is for the jury."

The modification of the court was proper, and after a careful inspection of the other instructions, we think it equally true of all of them, which the court changed or modified.

It is insisted the verdict is excessive and the judgment should for that reason be reversed.

The evidence shows that appellee was seriously injured; that he has endured great suffering and pain; that the lower portion of one of his limbs is partially paralyzed and will probably always remain so, and that as a consequence he will be lame the rest of his life; that he paid out about $1,000 for physicians, nurses, extra help, etc.

A number of cases are cited by appellant, where verdicts have been set aside because regarded as excessive.

If this verdict is so large as to create the impression that it is not the result of the fair, deliberate judgment of the jury, then it would be our duty to set it aside.

The rule as laid down by the Supreme Court is thus expressed by Mr. Justice Breese in the Simmons case, 38 Ill. 244: " Of the amount (of damages) under the facts, the jury were the sole judges, and when no other evidence of prejudice or passion appears in the finding, courts seldom set aside a verdict for excessive damages in an action like this."   And in the McKean case, 40 Ill. 235, the same learned judge, after referring to the holding of the court in a number of cases, says : " The result of the rulings of this court on this question may be summed up as follows: That a verdict, in a case of tort, will not be disturbed unless it seems probable, from the amount of the damages assessed, that the jury acted under the influence of prejudice and passion."

In Sutherland on Damages, Vol. 1, p. 810, it is said: " When there is not a legal measure of damages, and when the damages are unliquidated, and the suit is referred to the discretion of the jury, the court will not, ordinarily, interfere with the verdict.   It is the peculiar province of the jury in such

cases, under appropriate instructions from the court, to decide such cases, and the law does not recognize in the court the power to substitute its own judgment for that of its jury."

Chief Justice Kent, in delivering the opinion of the court in the case of Coleman v. Southwick, 9 Johns. 45, says : "The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and, unless the damages are so outrageous as to strike. every one with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption, we can not, consistently with the precedents, interfere with the verdict.

" It is not enough to say that in the opinion of the court the damages are too high and that we would have given much less. It is the judgment of the jury and not the judgment of the court which is to assess the damages in actions for personal torts and injuries. * * * The measure of damages in actions of tort is vague and uncertain, depending upon a vast variety of causes, facts and circumstances in the state, grade, quality, trade or profession of the party injured as well as of the party who did the injury. * * * In short, the damages must be flagrantly outrageous and extravagant, or the court can not undertake to draw the line, for they have no standard by which to ascertain the excess."

In the case at bar there seems to have been no evidence of passion or prejudice on the part of the jury, unless it be found in the large amount they have allowed as damages.

Is this amount so large as to strike every one with the enormity and injustice of it? If the jury from a fair and dispassionate view of the whole case, under proper instructions as to the law, have honestly reached the conclusion that the damages allowed will no more than compensate appellee for the money expended, the pain endured and the necessity upon his part of passing the rest of his life as a cripple, we can not say that their estimate is so outrageous as to strike every one with the enormity and injustice of such conclusion.

The value of the use of one's limbs uninjured and unim-

paired, as said by counsel for appellant in reference to suffering, has no market, or ascertainable, value. No two men would perhaps place the same estimate upon it. And if we were to interfere upon this ground, it would be substituting our opinion for that of the jury upon a question which we have no superior means of determining, and one which the law has expressly created the jury to decide. We are not prepared to take the responsibility of saying that the damages are exorbitant, or outrageous. There are some other questions of minor importance referred to in the briefs of counsel which we have not referred to, but we have carefully examined the entire record, and every point urged as a ground relied upon for reversal, and being fully impressed with the importance, to the parties hereto, of correctly deciding the questions of fact involved, we can see no good and substantial reason for interfering with the verdict of the jury.

The judgment of the Circuit Court will therefore be affirmed.

*Judgment affirmed.*