## Chicago & Alton Railroad Company v. Katie C. Kelly.

1. EVIDENCE—*In Suits Based on Negligence—Rules of Railroads and of the United States Mail Service.*—In a suit against a railroad company by a United States transfer mail clerk for injuries received by him while in the discharge of his duties, the court admitted in evidence a rule of the railroad company regarding the operation of trains and a government rule regulating the conduct of clerks in the transfer of mail. *Held,* that under the circumstances the action of the court was proper.

2. INSTRUCTIONS—*Must be in Writing.*—An oral request for an instruction is not sufficient. It is only for a refusal to give a written instruction prepared and tendered that error can be assigned.

3. RAILROADS—*Running Train Past Station Where Passenger Train is Stopping or About to Stop, Negligence.*—The running of a freight train at a high rate of speed past a station where a passenger train is receiving and discharging passengers is plainly negligence; and it is equally negligent to so run a freight train just as the passenger train is pulling into the station, and more especially when the track on which the freight train is moving is between the depot and the track on which the passenger train is moving.

4. NEGLIGENCE—*Injury Must be Attributable to Defendant's Negligence and to that Alone.*—The doctrine of comparative negligence is no longer the law in this State, and to entitle a plaintiff to recover he must have been in the exercise of ordinary care at the time of receiving the injury, and a plaintiff could not have been in the exercise of ordinary care and at the same time guilty of negligence that contributed to the injury. The injury must be attributable to the defendant's negligence and to that alone.

**Trespass on the Case.**—Death from negligent act. Appeal from the Circuit Court of McLean County; the Hon. THOMAS F. TIPTON, Judge, presiding. Heard in this court at the November term, 1897. Reversed and remanded. Opinion filed June 3, 1898.

JOHN E. POLLOCK, attorney for appellant; WILLIAM BROWN, of counsel.

FIFER & BARRY, A. M. CONARD and FRANK GILLESPIE, attorneys for appellee.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment of $3,800, recovered by appellee against appellant for the killing of her husband by one of appellant's trains at the Union depot in Bloomington.

Appellee's husband was in the employ of the United States as transfer mail clerk at Bloomington. It was his duty to get the mail from passing trains on one road and see that they were properly placed upon trains going out upon other roads from the Union depot. The roads intersecting there were the two branches of the Chicago & Alton,

the "Big Four" and the Lake Erie & Western. The depot is immediately west of and adjoining the main line of appellant's road, which at this point has two tracks, a west track and an east track. The east track is used by south bound trains and the west by north bound trains. Passengers and other persons going to and from the depot from south bound trains are compelled to pass over the west track. A short distance south of the depot and west of the main line was the office of the transfer mail clerk where incoming mail was stored in sacks and pouches until they could be delivered to mail agents on outgoing trains. To get from this office to south going trains on appellant's main line Kelly was obliged to cross the west track. On the night that he was killed the regular mail train for St. Louis was due at 1:25 A. M. It arrived at the station on time. At the time it was pulling in, a freight train from the south stopped on the west track for the railroad crossing, about five or six hundred feet south of the depot. When the engineer of the freight train stopped his train the target signal was against him. As soon as the target man had given the passenger train the signal to proceed he signaled the freight train to come on, thus bringing the two trains into the station at the same time. The engineer of the freight train did not obey the signal until it had been given him a second time. When his train reached the station it was moving at a rapid rate of speed, estimated at from ten to twenty-five miles per hour. Just before reaching the depot the engine struck Kelly as he was going across the track to the small platform between the tracks where the mail of south bound trains was usually dumped. He was instantly killed. Only two witnesses saw the accident, one for appellant and the other for appellee. Both agree that Kelly did not look up or down the track and did not act as though he knew of the approach of the freight train. Two men testified that they warned him of the approach of it, but it is uncertain whether he heard them.

A reversal is asked because the court improperly admitted as evidence appellant's rule 13, and a government rule regu-

C. & A. R. R. Co. v. Kelly.

lating the conduct of clerks in the transfer of mail; because the court gave an erroneous instruction for appellee and refused proper ones offered by appellant, and because at the time he was killed, Kelly was so reckless for his own safety as to preclude a recovery.

The rule of appellant which was received in evidence over objection is as follows :

"Rule 13.  Passenger Trains Standing at Stations on Double Tracks.—Trains approaching a station where a passenger train may be standing, receiving or discharging passengers must be *stopped* before reaching the passenger train, and must not be moved forward until the passenger train moves forward.  When two passenger trains running in opposite directions arrive at a station on double track at or about the same time, the train having the right of the road (on single track) will have the right to go to the station platform first, and the other train must stand back until the opposite train has discharged its passengers and departed."

It is insisted that the rule was intended solely for the government of appellant's employes in the operation of trains, and not to influence the conduct of others, and that Kelly had no right to rely upon it.  While the rule may have been intended for the information of employes solely, it can hardly be supposed that Kelly was in ignorance of it, having worked at that place and seen its daily observance for more than a year.  Indeed, we think he would be charged with a knowledge of the rules regulating the movement of trains at that particular place.  If he knew the rule, he had a right to suppose that it would be observed, and doubtless his movements in the discharge of his duties in the transfer of mail were influenced by it.  It is also insisted that the rule only applies where the passenger train is already standing at the station.  The evident purpose of the rule was to avoid just such an accident as the one involved in this case.  We can not think a construction so narrow as the one counsel now place upon it was ever intended by the power that promulgated it.  The court committed no error in admitting it in evidence.

The government rule regulating the conduct of clerks in transfer of mail which was admitted over the objection of appellant is as follows:

" Transfer clerks are expected to use extraordinary vigilance in guarding the mails under their charge, which must not be left for a moment exposed, day or night, and especially in making transfers where there is a considerable portage between trains; they should accompany the mails upon the wagon in all cases possible where there is no authorized clerk in charge of the same, and sit in such positions at all times as to be able to instantly detect the loss of a pouch or a sack."

We can not see how any possible harm came to appellant from the admission of that rule. It was relevant as explanatory of the conduct of the deceased at the time he was killed.

It is claimed the court erred in overruling appellant's motion to instruct the jury to find the defendant not guilty. The only motion of that kind made was oral and was not accompanied by a peremptory written instruction. An oral request for an instruction is not sufficient. It is only for a refusal to give a written instruction prepared and tendered, that error can be assigned. Wenona Coal Co. v. Holmquist, 152 Ill. 581.

The running of a freight train at a high rate of speed past a station where a passenger train is receiving and discharging passengers is so plainly negligent as not to require comment.

It is equally negligent to so run a freight train just as the passenger train is pulling into the station, and more especially when the track on which the freight train is moving is between the depot and the track on which the passenger train is moving.

The main contention of appellant arises upon the alleged negligence of Kelly. It is urged that he exercised no care whatever, but rushed recklessly into the danger which cost him his life. In presenting this contention counsel for appellant call special attention to the testimony of William

Subke, William Gabsen and Jay Franks. Subke and Gabsen were the only eye witnesses to the accident. They testified that as the passenger train was pulling into the station from the north, they observed Kelly, moving in a northeasterly direction from where his office was located toward where the mail was usually dumped from south bound trains, step upon the west track immediately in front of the freight train, and that he did not look for trains before doing so. Franks testified that Kelly was in the express office, a small room on the west side between the depot and Kelly's office, just before the arrival of the trains; that he told Kelly in reply to a question from him that the passenger train was coming, and soon after, discovering that the freight train was coming, told him of that also; that Kelly made no response when he told him the freight train was coming and paid no heed to it; that he started with him in the direction of the passenger train and that Kelly was immediately in his rear when struck.

In behalf of appellee the court gave to the jury the following instruction :

"7. Even if you should believe from the evidence that the plaintiff's intestate was guilty of some negligence, yet if you further believe from the evidence that his negligence did not materially contribute to the injury, and that he was injured and killed through the carelessness and negligence of the defendant, as charged in some count of the declaration, then your verdict must be for the plaintiff."

The legal proposition involved in this instruction is that the plaintiff, in an action on the case for negligence, may recover, notwithstanding his own negligence contributed to the injury, provided it did not materially so contribute. The doctrine of comparative negligence is no longer the law in Illinois. To entitle a plaintiff to recover in this kind of an action he must have been in the exercise of ordinary care at the time of receiving the injury. He could not be in the exercise of ordinary care and at the same time guilty of negligence that contributed to the injury. The injury must be attributable to the defendant's negligence and to

that alone.    Calumet Iron and Steel Co. v. Martin, 115 Ill.
358; Pullman Palace Car Co. v. Laack, 143 Ill. 242; Lake
Shore & M. S. Ry. Co. v. Hessions, 150 Ill. 546.

In view of the testimony in this  case we can readily see
the danger of such an instruction.   It is uncertain whether
Kelly heard Franks say that the freight train was coming.
If he did he was guilty of  some negligence  in not looking
out for it, even though it be said  that the negligence of the
defendant when  compared with it was gross.    Under this
instruction the  jury would  very naturally understand that
they were  authorized to compare  the negligence of  the
defendant  with that of  the deceased, and  while they· may
have reached the conclusion that Kelly heard Franks, they
could also conclude that his negligence was so slight as not
to preclude a recovery.

For the error of the court in giving  this instruction the
judgment must be  reversed and · the cause remanded for
another  trial.

Reversed  and remanded.