## Chicago & Alton R. R. Co. v. Katie C. Kelly, Adm'x.

1. VERDICTS—*Of Two Juries—When Conclusive.*—So far as concerns an assignment of error by which the negligence of the defendant is brought in question, and the action of the trial court in refusing a peremptory instruction to find a verdict for the defendant, this court will accept the verdict of two juries, and the former opinion of the court relative to the same question, as conclusive.

2. INSTRUCTIONS—*Two Definitions of Ordinary Care Without Substantial Difference.*—Two definitions of ordinary care, in instructions, by one of which it was defined to be such care as a reasonably prudent person would exercise under the same or like circumstances, and another that it is such care as a reasonably prudent person would exercise under the same or like circumstances while in the exercise of care, and not at a time when such prudent person happened to be careless, are substantially the same as to what in law constitutes ordinary care, except that in the latter instance the instruction assumes that a prudent person would be careless.

3. SAME—*In Estimating Damages—Death From Negligent Act.*—An instruction in which the jury are told that they may, in estimating damages, consider whatever they may believe, from the evidence, that the widow and next of kin might have reasonably expected in a pecuniary way from the continued life of the deceased, is not erroneous. What the widow and next of kin might reasonably expect, amounts to the same as any other reasonable person might reasonably look forward to as something believed to be about to happen or come, and by this test

the question was submitted to the jury, as reasonable men, to say from the evidence what such reasonable expectation would be.

4. NEGLIGENCE— *Running a Freight Train at a High Rate of Speed Past a Station.*—Running a freight train at a high rate of speed past a station where a passenger train is receiving and discharging passengers is so plainly negligent as not to require comment; and so it is to so run a freight train just as a passenger train is pulling into a station; more especially so when the track on which the freight train is moving is between the depot and the track on which the passenger train is moving.

5. SAME— *Failure to Look and Listen.*—As a matter of law the failure to look and listen is not necessarily negligence. Such matters are proper for the consideration of the jury in determining whether a person has been negligent, but it can not be said as a matter of law that such failure is negligence.

**Action for Personal Injuries.**—Trial in the Circuit Court of McLean County: the Hon. COLOSTIN D. MYERS, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the November term, 1898. Affirmed. Opinion filed February 7, 1899.

JOHN E. POLLOCK, attorney for appellant; WM. BROWN, general solicitor.

Under the facts in this case "there is no reasonable chance of different reasonable minds reaching different conclusions, and hence the question of contributive negligence becomes a matter of law." Street Ry. Co. v. Meixner, 160 Ill. 324; Wabash Ry. Co. v. Brown, 152 Ill. 484.

FIFER &. BARRY, FRANK GILLESPIE and A. M. CONARD, attorneys for appellee.

It is negligence to run a train between a station and a train opposite it engaged in discharging and receiving passengers, express and mail, it being necessary for passengers and persons whose business it is to receive the express and mail to cross the intervening track. Tubbs v. Mich. Cen. R. R. Co., 64 N. W. Rep. (Mich.) 1061. Terry v. Jewett, Rec'r, 78 N. Y. 342.

Running a train at a high rate of speed past a station where another train is waiting to receive passengers is dangerous to persons who may be crossing a track to take the waiting train, and is negligence on the part of the company whose servants are in charge of. the moving train. C., St. P. & K. C. R. R. Co. v. Ryan, 62 Ill. App. 264.

In this State it is not a rule of law that a traveler is bound to stop, look and listen, or to do any or either of these things. C. & N. W. R. R. v. Dunleavy, 129 Ill. 147; T. H. & I. R. R. v. Voelker, 129 Ill. 551; Partlow v. I. C. R. R., 150 Ill. 327; C. & N. W. R. R. v. Hansen, 166 Ill. 623.

Mr. Justice Wright delivered the opinion of the court.

Appellee, as the administratrix of George J. Kelly, brought this suit against appellant for negligently causing the death of her intestate. A trial by jury resulted in a verdict and judgment against appellant for $5,000, from which it appeals to this court, assigning various errors upon the record, by which it seeks a reversal of the judgment. The principal errors urged upon the attention of this court, in the argument of counsel, are (1) that the facts do not warrant a recovery, and that the peremptory instruction to find for appellant, should have been given by the trial court; (2) that improper evidence was admitted by the court, and (3) the court gave improper and refused proper instructions to the jury.

Appellee's intestate, at the time he was killed, was in the employ of the United States as transfer mail clerk at Bloomington, it being his duty to transfer mail to and from the various trains arriving and departing from the Union depot, the railroads intersecting at this point, being two branches of appellant, with double track, the Big Four and Lake Erie and Western. On the night Kelly was killed the regular mail train for St. Louis was due at the station at 1:25 A. M., and upon its arrival upon the east track, a freight train also arrived from the south upon the west track, and the two trains thus came to the station at the same time, the latter at a speed of from ten to twenty-five miles per hour. The depot was situated on the west side of the two tracks, and between the tracks was a small platform where the mail from southbound trains was usually placed to be taken by the transfer clerk. To reach this platform from the depot it was necessary to cross the west track upon which the freight train

was approaching, and in attempting to do this Kelly was struck by the engine of the freight train and instantly killed.

The case was before us at a former time, and was then reversed and the cause remanded for reasons stated in the opinion of the court, 75 Ill. App. 490. So far as concerns the assignment of error by which the negligence of the appellant is brought in question, and the action of the trial court in refusing the peremptory instruction to find a verdict for appellant, we must accept the verdict of two juries, and our former opinion relative to these questions, as decisive of these points. The facts established by the evidence, relative to the alleged negligence of appellant, by which the death of Kelly was occasioned, are not substantially different in the present record from those appearing in the former. When the case was before us in the first instance we said:

"The running of a freight train at a high rate of speed past a station where a passenger train is receiving and discharging passengers is so plainly negligent as not to require comment. It is equally negligent to so run a freight train just as the passenger train is pulling into the station, and more especially when the track on which the freight train is moving is between the depot and the track on which the passenger train is moving."

Accepting this quotation from our former opinion as binding authority in this case, upon the point in question, as we think we must, under section 17 of the Appellate Court act, we come to consider the remaining question of fact, presented by the assignment of errors and argument of counsel, whether the deceased was in the exercise of ordinary care for his own safety at the time he received his injuries, whereby his death was occasioned.

To properly determine this question it should be borne in mind that appellee's intestate had been a transfer clerk in the United States mail service, at this junction, for more than a year before his death. It is reasonable to infer, from his length of service, he was acquainted with the rules of appellant in respect to the running of its trains, and that

he would, in the exercise of ordinary care, conform his actions in respect thereto. The following rules were in force at this station at the time of the accident in question:

"Rule 13. Passenger trains standing at stations on double track.—Trains approaching a station where a passenger train may be standing, receiving or discharging passengers, must be stopped before reaching the passenger train, and must not be started before the passenger train moves forward. When two passenger trains, running in opposite directions, arrive at a station on double track, at or about the same time, the train having the right of the road (on single track) will have the right to go to the station platform first, and the other train must stand back until the opposite train has discharged its passengers and departed.

26. The speed of trains must not exceed six (6) miles per hour through incorporated cities and towns on the line."

If, as contended by counsel for appellant, the deceased was notified that the freight train which killed him was coming, as well as the passenger from which he was to receive mail, he had the right to rely upon appellant complying with its rule in this respect, and relying upon it, he knew that the freight train would be stopped before reaching the passenger train, and that he could with safety do as he did. The freight train was not stopped, as the rule required, resulting in the death of appellee's intestate. We think conclusions like this were fair and reasonable, from all the evidence, and the jury were at liberty to infer ordinary care and diligence on the part of the deceased, from all the circumstances of the case. To hold otherwise would be, in effect, to presume negligence on the part of one in excuse of negligence on the part of another. Illinois C. R. R. Co. v. Nowicki, 148 Ill. 29, and cases cited; Chicago & N. W. R. R. Co. v. Hansen, 166 Ill. 623.

It is insisted, also, that the court erred in the admission in evidence of the rule of the postoffice department regulating the conduct of clerks in the transfer of mail, which is as follows:

"Transfer clerks are expected to use extraordinary vigilance in guarding the mails under their charge, which must

not be left for a moment exposed, day or night, and especially in making transfers where there is a considerable portage between trains; they should accompany the mails upon the wagon in all casses possible where there is no authorized clerk in charge of the same, and sit in such positions at all times as to be able to instantly detect the loss of a pouch or sack."

It is well known the railroads have contracts with the government with respect to carrying the mails; it is a part of their business as common carriers; they know also the government has in its employ various agents for the purpose of handling and transferring the mails, such as the appellee's intestate, and it should be presumed the employes of appellant were familiar with his duties, and might reasonably be expected to anticipate his presence at the time and place in question, in the regular discharge of his duties. It is not unreasonable also to infer that appellant, being in a sense in the same line of employment with the deceased in handling the mail, was familiar with the rule in question, and was thereby informed of the duties of the deceased, and should have, in the exercise of ordinary foresight, expected his presence at the time and place in question, in discharge of his duties under such rule, and to have regulated their trains with due regard to his safety. Considerations of this kind surely made the rule competent evidence for the consideration of the jury.

It is next insisted that the court, in its instructions to the jury, gave two definitions of ordinary care. One at the request of appellee, by which it is defined to be such care as a reasonably prudent person would exercise under the same or like circumstances, and at the request of appellant that it is such care as a reasonably prudent person would exercise under the same or like circumstances while in the exercise of care, and not at a time when such prudent person happened to be careless. We fail to see any substantial difference in the two statements of that which constitutes ordinary care, except that in the latter instance the instruction assumes that a prudent person would be careless, an infirmity in appellant's own instruction of which it could take no advantage.

It is also complained that the fifth instruction given for appellee, in which the jury are told they may, in estimating damages, consider whatever they may from the evidence believe the widow and next of kin might have reasonably expected in a pecuniary way from the continued life of the intestate. We see no ground for the criticism put upon this instruction. What the widow and next of kin might reasonably expect would be the same as any other reasonable person might reasonably look forward to as something believed to be about to happen or come, and by this test the same question was submitted to the jury, as reasonable men, to say from the evidence what such reasonable expectation would be.

Again it is insisted the court erred in refusing to instruct the jury, at the instance of appellant, that if the deceased did not look to see if the freight train was approaching, and that by reason of his failure to look he was injured, he could not recover.

In the later cases the tendency of the decisions has been to the effect that what is or what is not negligence, is a question of fact for the jury, and it is improper to state such matter in an instruction. Louisville, N. A. & C. Ry. Co. v. Patchen, 167 Ill. 204, and cases cited. In Chicago & N. W. Ry. Co. v. Hansen, 166 Ill. 623, it is said :

" And formerly this court, in passing upon questions both of law and fact, frequently prescribed that same duty (to look and listen), but it has since been repeatedly held that it can not be said, as a matter of law, that a traveler is bound to look or listen, because there may be various modifying circumstances excusing him from so doing.

It seems to us impossible that there should be a rule of law as to what particular thing a person is bound to do for his protection in the diversity of cases that constantly arise, and the question what a reasonably prudent person would do for his own safety under the circumstances must be left to the jury as one of fact."

In Partlow v. Illinois C. R. R. Co., 150 Ill. 321, the court say :

" It has often been said by this and other courts that it is the duty of a person approaching a railroad crossing to look

and listen before attempting to cross, and that a person failing to observe this precaution is guilty of negligence; but when the statement has been made, the court, as a general rule, was discussing a question of fact, and in such case the statment may be regarded as accurate.   But the court can not say, as a matter of law, that the failure to look and listen is negligence.·  These facts are proper for the consideration of the jury in determining whether a person has been negligent, but it can not be said as a matter of law that the failure to observe such acts is negligence."   Citing Chicago & N. W. R. R. Co. v. Dunleavy, 129 Ill. 132; Terre II. & I. R. R. Co. v. Voelker, 129 Ill. 540; Chicago, M. & St. P. Ry. Co. v. Wilson, 133 Ill. 60.

It follows therefore that the instructions upon this point were properly refused.

Finding no material error in the record, the judgment of the Circuit Court will be affirmed.