## Pennsylvania Co. v. Thomas A. Reidy.

1.  RAILROADS—*Negligence in Running Past Stations Where a Passenger Train is Discharging and Receiving Passengers.*—The running of a railroad train at a high rate of speed, on a parallel track, past a station where a passenger train is discharging and receiving passengers is plainly negligent, and it is equally so to run a train in like manner at a time when a passenger train is pulling into a station on a parallel track, where it is about to stop for the purpose of discharging and receiving passengers.

2.  NEGLIGENCE—*A Question of Fact for the Jury.*—In an action for personal injuries, the question as to whether a railroad company is guilty of negligence in the management of its trains in running them at a high rate of speed past a station, or stopping place, on a road running parallel to it, where another train has stopped for the purpose of discharging or receiving passengers, is a question of fact for the determination of a jury.

3.  DAMAGES—*Where $10,000 is Not Excessive.*—Where a man was injured in a railroad accident, and his ankle so shattered as to require amputation of his leg about four inches below the knee, and it was about six weeks before he could go about his house upon crutches, a judgment for $10,000 was held not to be excessive.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the March term, 1901. Affirmed. Opinion filed January 16, 1902.

**Statement by the Court.**—Appellee was injured by being struck by appellant's engine February 8, 1892, and brought suit therefor, which has been tried twice, the first trial resulting in a verdict in his favor of $12,000 and judgment, after a remittitur, for $10,000, which was reversed by this court for errors in procedure (72 Ill. App. 343), and the second trial resulted in a verdict in his favor for $10,000 and judgment thereon, from which this appeal is taken.

On the second trial, at the close of all the evidence, defendant's counsel moved the court to direct a verdict in its favor, which was denied.

Among other instructions for the plaintiff the court gave the following:

B. " The jury are further instructed that if, under the evidence and instructions of the court, they find the defendant guilty, then in estimating the plaintiff's damages, if any, they have a right to take into consideration the personal injuries inflicted upon the plaintiff, if any; the pain and suffering undergone by him in consequence of his injury, if any are proved; and also any permanent injuries sustained by him, if the jury believe from the evidence that the plaintiff has sustained such permanent injuries from the wrongful acts complained of."

The court also of its own motion gave the following instruction:

A. " The jury are instructed that this is a suit brought to recover damages which it is alleged were caused the plaintiff by and through the negligence of the defendant company, as set forth in plaintiff's declaration, or in some one or more of the counts thereof.

In order to a recovery of any damages in the case it is required that you shall believe from a fair and impartial consideration of all the evidence in the case that the preponderance of greater weight of the evidence establishes, first, the fact that plaintiff suffered an injury, as stated in his declaration, and the extent thereof; second, that he himself was at the time and place of said injury exercising reasonable and ordinary care and caution for his own safety; and, third, that the injury was the direct and proximate result of the negligence of the defendant company at said time and place, as the same is set out in the declaration, or in some one or more of the counts thereof."

On behalf of the defendant the court gave sixteen instructions and refused others, among them the following:

24. " Reference by plaintiff's counsel to his own misfortune in having lost one of his legs, was highly improper, and should in no wise influence the jury."

GEO. WILLARD, attorney for appellant.

SETH F. CREWS and RALPH CREWS, attorneys for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

For appellant it is claimed that the trial court erred in not taking the case from the jury at the close of the evi-

dence, both because, it is said, the evidence shows that the appellee was guilty of contributory negligence, and that the appellant was not guilty of the negligence charged in the declaration.

The declaration charges appellant, first, with negligence in carelessly and negligently driving and managing its train; second, in running its engine across a highway without ringing a bell or sounding a whistle, in violation of the statute; third, in running its engine and train negligently and improperly past a station or stopping place of passenger trains on the Eastern Illinois Railroad at not less than twenty-five miles an hour; and, fourth, in negligently driving its engine and train toward the highway crossing at a rate of speed higher than twenty-five miles per hour, contrary to the city ordinances. There is no evidence to sustain the verdict and judgment under the second and fourth charges, and a recovery, if it can be sustained, must be based upon the first and third charges of negligence.

The evidence shows that appellee, a switchman of the Eastern Illinois Railway, on the day of the accident came from Auburn Park on a passenger train of the Eastern Illinois Railroad, which arrived on its way to the center of the city at Thirty-first street and Stewart avenue at about 5:20 P. M. Stewart avenue, at this point, runs north and south, and Thirty-first street at right angles to it, east and west. There were a number of railway tracks running north and south at this point on Stewart avenue, among them two tracks of the Western Indiana Railway Co. on the west, and two tracks of the appellant on the east, there being a space of some twenty feet between the two sets of tracks. On this space there was a platform about two and one-half feet wide and some ninety feet long and about fifteen inches high, extending south from Thirty-first street, which was used by passengers alighting from and taking the passenger trains of the Eastern Illinois Railway Co., which used the tracks of the Western Indiana Co. There was a watchman stationed at the street crossing, and gates were there also. The Eastern Illinois train, on which appellee was a passenger, came from

the south, was a few minutes late, and stopped at this plat-
form to discharge and receive passengers. A passenger
train of appellant, known as the Limited New York Express,
came from the north, going south, on time, at a speed vari-
ously estimated by the witnesses at from fifteen to thirty
miles per hour. Appellee alighted from the north platform
of the rear coach of the Eastern Illinois train at or near
the south line of Thirty-first street, and proceeded in an
easterly direction on or near the south sidewalk of Thirty-
first street, to cross the tracks of appellant and go to his
home, which was in that direction, and about one-half
block south of Thirty-first street. Just north of the north
line of Thirty-first street, on this space between the two
sets of tracks, was a small switchman's house, used by
switch-tenders, about six feet high and three feet wide.
There were also in this same space several persons, either
leaving the train of the Eastern Illinois or waiting to take
it, the evidence of the witnesses differing as to the number,
one witness for the defense stating that there were perhaps
three persons, while the plaintiff states that when he looked
north, as he was leaving the Eastern Illinois train, "there
was nothing to see only the people that were standing on the
north side of Thirty-first street." He does not state the
number. The witness McGrew, for the plaintiff, says there
were several people on the crossing. The bell of the East-
ern Illinois train was ringing as plaintiff proceeded east-
ward. Plaintiff says that before he stepped off onto the
platform he looked both north and south, but did not see
appellant's train coming, only saw the people on the north
side of Thirty-first street and the shanty (referring to the
switch-house); that it "was just dusk; just started to get
dusk"; that he started to walk across on the sidewalk, the
planking, board walk; that he was going a medium walk,
and when he got about twenty feet from the passenger train,
as he was walking along buttoning up his overcoat, and just
as he stepped over on appellant's track, he "heard some
feller holler, and when he hollered, this (appellant's) train
was right on top of me and I jumped. That is all that I

remember seeing there at all." McGrew, one of appellee's witnesses, says that he saw appellee getting off the Eastern Illinois train at the south side of Thirty-first street; that he was close to appellee; that " when he got off he started to go home east. He started to cross the Pennsylvania tracks to go home, and I happened to look north, and I saw the Pennsylvania Limited coming south, and I called out, ' Look out, Tom,' and Tom made a dive for his life. * * * He was in the south-bound track of the Pennsylvania Company. He jumped east the way he was facing. That train was running when it passed Thirty-first street, I dare say, thirty miles or more per hour. It smashed Reidy's ankle. The train ran its length, lacking half a coach length, before it stopped. They generally pulled five cars in that Limited, five to six. The hind end of the train stood on Thirty-first street. This Chicago & Eastern Illinois train at the time this happened was standing on Thirty-first street. It stopped there to let off and take on passengers. The Pennsylvania Limited engine, when I first saw it, was just north of Thirty-first street." He also says that when he first saw appellant's train it was within twenty feet of the north line of Thirty-first street.

The witness Smith, for appellant, says that when appellee got off the Eastern Illinois train he started to run east on Thirty-first street, and "somebody hollered at him," and appellee tried to run around the Pennsylvania Limited; that the bell of appellant's train was ringing when it reached the crossing, and it was going "about twenty miles an hour, perhaps not that much." He also says that he saw appellant's train before the Eastern Illinois train stopped, and that there was nothing whatever to prevent any one standing on the platform from seeing the train as it approached from the north.

The engineer of appellant's train says that his engine was about the north end of the crossing when the Eastern Illinois train stopped; that the gates were down, and the man in charge of the crossing gave him a signal to come ahead; that the first intimation he had of any

danger was when his engine was about the north end of
the crossing (meaning evidently the north crossing of
Thirty-first street), when he saw a man run across the track
maybe ten or twelve feet ahead of his engine; that he
"stepped over on the left-hand side of the engine to see
whether he was hit or not, and I seen that he fell down.    I
come back and shut the engine off and put on the brake
and stopped the train on the crossing.    *    *    *    I couldn't
have saved him.    I wouldn't have time.    If I had knowed
it was going to happen I would have plenty of time.    I
didn't know.    We were running the schedule time, about
fifteen miles an hour."    He also says :

"I believe we had five cars, to the best of my memory
·we pulled five or six.    The engine and tender was fifty-five
feet long.    They were all Pullman vestibule cars.    Some
are longer than others; I should think about seventy feet,
an average of that.    The bell was ringing.    *    *    *    The
cars were equipped with air brakes.    *    *    *    We had all
the established means of controlling the speed of the train."

He also says that he saw the Eastern Illinois train
approaching the station; that he was paying attention to
the people getting off of it; that when he first saw appellee
he was on the south side of Thirty-first street, and he was
running; that it was clear.    The weather was clear and it
was not getting dark; that the brakes were in good order,
and that when running at fifteen miles an hour he could
stop the train in a couple of car lengths, maybe less; that
if the train was going thirty miles an hour under the same
circumstances, "it would take a little longer" to stop it.

The witness Furnish, for the defendant, who was a
brakeman on the Eastern Illinois train, corroborates the
engineer of appellant's train as to appellee running across
the track in front of the train, but says that appellee
jumped off the Eastern Illinois train north of the center of
Thirty-first street; that it was daylight; that appellant's
train was going about twenty miles an hour.

The evidence shows that the length of appellant's train
was about 450 to 500 feet.    According to the engineer's
estimate, it was, if he had five cars, 405 feet, and if six cars,

Pennsylvania Co. v. Reidy.

475 feet. Appellant's train stopped when the end of its rear coach was on Thirty-first street, and we think, from all the evidence, the train must have run from 400 to 500 feet after the engineer saw the danger. From this evidence, considered in connection with the rate of speed testified to by the different witnesses and the opinion of the engineer as to the distance in which he could stop the train under the circumstances shown, we think the jury might well have found that the speed of the train was as high as thirty miles per hour as it approached Thirty-first street.

There was also in evidence a rule of the appellant company in force at the time of the accident, which reads as follows:

"A train approaching a station where a passenger train is receiving or discharging passengers, must be stopped before reaching the passenger train."

The evidence shows that there was a custom on appellant's lines of railway that where two passenger trains were approaching a point where one of them was scheduled to stop and the other not, the train scheduled to stop would slow up to let the other train get by, in order to avoid having the through train make a stop. Appellant's train in question was not scheduled to stop at Thirty-first street, though there is evidence that some of its trains did stop for the discharge and receipt of passengers at this place. The Eastern Illinois train was scheduled to stop at this place, though it was behind time several minutes. There was evidence by several witnesses on behalf of appellant, that said rule was construed by appellant's employes to be applicable to appellant's road alone, and not to other roads, and the court instructed the jury that there was no evidence, "that the defendant or any of its officers, agents or employes understood that said rule 114 applied to any trains or tracks other than those of said defendant, Pennsylvania Company." The construction of this rule was a matter for the court, and the evidence in this regard can not avail appellant. We think it immaterial what construction was given this rule by appellant and its employes.

We are of opinion, in view of the foregoing evidence, that it was a question for the jury as to whether appellant was guilty of negligence in the management and running of its train, under the circumstances shown, at a high rate of speed past the station or stopping place of passenger trains on the Eastern Illinois railroad, at a time when a passenger train of the latter road was stopping or had stopped for the receipt and discharge of passengers. Under this evidence, omitting appellant's rule, we are inclined to the opinion that it presented a question for the jury, and we can not say but that the jury were justified in finding that appellant was negligent. Chicago & Alton R. R. Co. v. Kelly, 75 Ill. App. 490-4; Chicago & Alton R. R. Co. v. Kelly, 80 Ill. App. 675-8, and affirmed in 182 Ill. 267, adopting the opinion of Mr. Justice Wright of Appellate Court, Third District, in which he said:

"The running of a freight train at a high rate of speed past a station where a passenger train is receiving and discharging passengers, is so plainly negligent as not to require comment. It is equally negligent to so run a freight train just as the passenger train is pulling into the station, and more especially when the track on which the freight train is moving is between the depot and the track on which the passenger train is moving."

The same is true as to the question of appellee's contributory negligence. The evidence tends to show that appellee's view was obstructed by the switch house and people standing on Thirty-first street at the time he looked to the north, and the bell of the Eastern Illinois train was ringing. C. & N. W. Ry. Co. v. Hansen, 166 Ill. 623, and cases cited; C. & A. R. R. Co. v. Fell, 182 Ill. 523; I. C. R. R. Co. v. Batson, 81 Ill. App. 143-52; C. & A. R. R. Co. v. Kelly, 182 Ill. 267.

It is claimed that the court erred in admitting in evidence the rule above quoted. We held on the former appeal (72 Ill. App. 343) that this rule was properly admitted, and although there is some additional evidence not in the former record, to the effect that it had been construed by appellant's employes as having no application to other roads, we see no reason why it should have been excluded.

The instruction "A" quoted in the statement, is criticised as being misleading, because it assumes that the defendant was negligent. We think the criticism not good. The instruction, as we read it, makes no such assumption.

It is also said that the instruction is objectionable because it limits the exercise of care on the plaintiff's part to "the time" of the injury, and cases are cited which seem to support the contention. A careful reading of these cases, however, as we think, shows the contrary. In Ry. Co. v. Hessions, 150 Ill. 546–55, this objection to a similar instruction was held to be untenable. To a like effect are: R. R. Co. v. Johnson, 135 Ill. 641–53; McNulta v. Lockridge, 137 Ill. 270–87; R. R. Co. v. Fisher, 141 Ill. 614–25.

In the Johnson case it was said the words "at the time," as used in the instruction, referred to the whole transaction. Moreover, by appellant's instructions 5 and 7, the jury were instructed as to appellee's care, so that they could not have been misled.

We see no objection to appellee's instruction B, quoted in the statement. We also think there was no error in the refusal of appellant's instruction No. 24. The language of counsel used in his argument, to which the instruction has reference, is as follows:

" The lamest excuse, lamer than Tom Reidy is, or I am, or possibly can be, because it has not even a leg to stand on, is the trumped-up theory in the imagination of counsel here that somebody in that train might have got hurt if he had stopped."

No objection to it was made at the time the language was used, and we think the statement was not an improper one.

It is also claimed that the closing address of plaintiff's counsel was misleading in several ways, but only one matter is called to our attention, viz., that it assumes that the accident happened after dark. While we think the weight of the evidence is to the contrary, there is basis for the claim of plaintiff's counsel. The plaintiff testified: "It was just dusk; just started to get dark." One of defendant's wit-

486    APPELLATE COURTS OF ILLINOIS.

nesses, Ross, the conductor, said it was between daylight and dark.

The further claim is made that the damages are grossly excessive, but we can not agree with the claim. Appellee's ankle was shattered so that his leg had to be amputated about four inches below the knee, and it was six weeks before he could go about the house upon crutches. Without any reference to appellee's present earning capacity, we can not undertake to say that the damages are excessive. R. R. Co. v. Holland, 18 Ill. App. 418–22; R. R. Co. v. Fisher, 38 Ill. App. 33–43; Ry. Co. v. Wilcox, 33 Ill. App. 450–3; Gibson v. Glizozinski, 76 Ill. App. 400–4; N. C. St. R. R. Co. v. Dudgeon, 83 Ill. App. 528.

The fact that there have been two verdicts and judgment thereon for $10,000 each, is not without weight.

The judgment of the Circuit Court is affirmed.