## The Chicago and Alton Railroad Company

### *v.*

## Katie C. Kelly, Admx.

*Opinion filed October 19, 1899.*

1. Appeals and errors—*opinion of Appellate Court is of binding authority on that court on second appeal.* An opinion of the Appellate Court disposing of assignments of error respecting the appellant's negligence and the action of the trial court in refusing to direct a verdict for appellant, is of binding authority upon such points on second appeal in the same cause, under section 17 of the Appellate Court act, (Hurd's Stat. 1897, p. 508,) where the evidence and verdicts in the two trials are the same.

2. Evidence—*admissibility of rules of post-office department in action for death of mail clerk.* Evidence that a rule of the post-office department requires a transfer mail clerk to use extraordinary vigilance in guarding mails, and not to leave them exposed, is competent in

an action to recover for the death of a clerk killed by a freight train while attempting to cross the tracks to receive mail from an incoming passenger train.

3. INSTRUCTIONS—*one cannot complain of infirmities in his own instructions.* An appellant cannot take advantage of an infirmity in an instruction given at his request.

4. SAME—*when instruction on question of damages in action for death is not objectionable.* An instruction that the jury may, in estimating damages caused by a person's death, consider what, from the evidence, the widow and next of kin might reasonably have expected, in a pecuniary way, from his continued life, is not objectionable.

5. SAME—*instructions should not attempt to state what facts constitute negligence.* What is or what is not negligence is a question of fact for the jury, and is not a proper subject for an instruction.

Chicago and Alton Railroad Co. v. Kelly, 80 Ill. App. 675, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

Appellee, as the administratrix of George J. Kelly, brought this suit against appellant for negligently causing the death of her intestate. A trial by jury resulted in a verdict and judgment against appellant for $5000, from which it appealed to the Appellate Court, where the judgment has been affirmed. The present appeal is from such judgment of affirmance.

Appellee's intestate, at the time he was killed, was in the employ of the United States as transfer mail clerk at Bloomington, it being his duty to transfer mail to and from various trains arriving and departing from the union depot, the railroads intersecting at this point being two branches of appellant, with double track, the Big Four and Lake Erie and Western. On the night Kelly was killed the regular mail train for St. Louis was due at the station at 1:25 A. M., and upon its arrival upon the east track a freight train also arrived from the south upon the west track, and the two trains thus came to the station at the same time, the latter at a speed of from ten to

twenty-five miles per hour.  The depot is situated on the west side of the two tracks, and between the tracks was a small platform where the mail from the south-bound trains was usually placed to be taken by the transfer clerk.  To reach this platform from the depot it was necessary to cross the west track upon which the freight train was approaching, and in attempting to do this Kelly was struck by the engine of the freight train and instantly killed.

JOHN E. POLLOCK, (WILLIAM BROWN, of counsel,) for appellant.

FIFER & BARRY, FRANK GILLESPIE, and A. M. CONARD, for appellee.

Per CURIAM: In deciding this case the Appellate Court delivered the following opinion:

"The case was before us at a former time, and was then reversed and the cause remanded for reasons stated in the opinion of the court.  (75 Ill. App. 490.)  So far as concerns the assignment of error by which the negligence of the appellant is brought in question, and the action of the trial court in refusing the peremptory instruction to find a verdict for appellant, we must accept the verdict of two juries, and our former opinion relative to these questions, as decisive of these points.  The facts established by the evidence, relative to the alleged negligence of appellant by which the death of Kelly was occasioned, are not substantially different in the present record from those appearing in the former.  When the case was before us in the first instance we said:  'The running of a freight train at a high rate of speed past a station where a passenger train is receiving and discharging passengers is so plainly negligent as not to require comment.  It is equally negligent to so run a freight train just as the passenger train is pulling into the station, and more especially when the track upon which

the freight train is moving is between the depot-and the track on which the passenger train is moving.'  Accepting this quotation from our former opinion as binding authority in this case upon the point in question, as we think we must, under section 17 of the Appellate Court act, we come to consider the remaining question of fact presented by the assignment of errors and argument of counsel, whether the deceased was in the exercise of ordinary care for his own safety at the time he received his injuries, whereby his death was occasioned.

"To properly determine this question it should be borne in mind that the appellee's intestate had been a transfer clerk in the United States mail service, at this junction, for more than a year before his death.  It is reasonable to infer from his length of service he was acquainted with the rules of appellant in respect to the running of its trains, and that he would, in the exercise of ordinary care, conform his actions in respect thereto.  The following rules were in force at this station at the time of the accident in question.

"'Rule 13.  Passenger trains standing at stations on double track.—Trains approaching a station where a passenger train may be standing, receiving or discharging passengers, must be *stopped* before reaching the passenger train, and must not be started before the passenger train moves forward.  When two passenger trains, running in opposite directions, arrive at a station on double track at or about the same time, the train having the right of the road (on single track) will have the right to go to the station platform first, and the other train must stand back until the opposite train has discharged its passengers and departed.

"'Rule 26.  The speed of trains must not exceed six (6) miles per hour through incorporated cities and towns on the line.'

"If, as contended by counsel for appellant, the deceased was notified that the freight train which killed

him was coming, as well as the passenger train from which he was to receive mail, he had the right to rely upon appellant complying with its rule in this respect, and relying upon it he knew that the freight train would be stopped before reaching the passenger train, and that he could with safety do as he did. The freight train was not stopped as the rule required; resulting in the death of appellee's intestate. We think conclusions like this were fair and reasonable from all the evidence, and the jury were at liberty to infer ordinary care and diligence on the part of the deceased from all the circumstances of the case. To hold otherwise would be, in effect, to presume negligence on the part of one, in excuse of negligence on the part of another. *Illinois Central Railroad Co.* v. *Nowicki*, 148 Ill. 29, and cases cited; *Chicago and Northwestern Railway Co.* v. *Hansen,* 166 id. 623.

"It is insisted, also, that the court erred in the admission in evidence of the rule of the post-office department regulating the conduct of clerks in the transfer of mail, which is as follows: 'Transfer clerks are expected to use extraordinary vigilance in guarding the mails under their charge, which must not be left for a moment exposed, day or night, and especially in making transfers where there is a considerable portage between trains. They should accompany the mails upon the wagons in all cases possible where there is no authorized clerk in charge of the same, and sit in such position, at all times, as to be able to instantly detect the loss of a pouch or sack.' It is well known the railroads have contracts with the government with respect to carrying mails. It is a part of their business as common carriers. They know, also, the government has in its employ various agents for the purpose of handling and transferring the mails, such as the appellee's intestate, and it should be presumed the employees of appellant were familiar with his duties, and might reasonably be expected to anticipate his presence at the time and place in question in

the regular discharge of his duties. It is not unreason-
able also to infer that appellant, being in a sense in the
same line of employment with the deceased in handling
the mail, was familiar with the rule in question, and was
thereby informed of the duties of the deceased, and should
have, in the exercise of ordinary foresight, expected his
presence at the time and place in question in discharge
of his duties under such rules, and to have regulated their
trains with due regard to his safety. Considerations of
this kind surely made the rule competent evidence for
the consideration of the jury.

"It is next insisted that the court, in its instructions
to the jury, gave two definitions of ordinary care,—one
at the request of appellee, by which it is defined to be
such care as a reasonably prudent person would exercise
under the same or like circumstances; and at the request
of appellant, that it is such care as a reasonably prudent
person would exercise under the same or like circum-
stances while in the exercise of care, and not at a time
when such prudent person happened to be careless. We
fail to see any substantial difference in the two state-
ments of that which constitutes ordinary care, except
that in the latter instance the instruction assumes that
a prudent person would be careless,—an infirmity in ap-
pellant's own instruction of which it could take no ad-
vantage.

"It is also complained that the fifth instruction given
for appellee, in which the jury are told they may, in esti-
mating damages, consider whatever they may, from the
evidence, believe the widow and next of kin might have
reasonably expected, in a pecuniary way, from the con-
tinued life of the intestate. We see no ground for the
criticism put upon this instruction. What the widow and
next of kin might reasonably expect would be the same
as any other reasonable person might reasonably look
forward to as something believed to be about to happen
or come, and by this test the same question was submit-

ted to the jury, as reasonable men, to say, from the evidence, what such reasonable expectation would be.

"Again, it is insisted the court erred in refusing to instruct the jury, at the instance of appellant, that if the deceased did not look to see if the freight train was approaching, and that by reason of his failure to look he was injured, he could not recover. In the later cases the tendency of the decisions has been to the effect that what is or what is not negligence is a question of fact for the jury, and it is improper to state such matter in an instruction. (*Louisville, New Albany and Chicago Railway Co.* v. *Patchen,* 167 Ill. 204, and cases cited.) In *Chicago and Northwestern Railway Co.* v. *Hansen,* 166 Ill. 623, it is said: 'And formerly this court, in passing upon questions both of law and fact, frequently prescribed that same duty, (to look and listen,) but it has since been repeatedly held that it cannot be said, as a matter of law, that a traveler is bound to look or listen, because there may be various modifying circumstances excusing him from so doing. * * * It seems to us impossible that there should be a rule of law as to what particular thing a person is bound to do for his protection in the diversity of cases that constantly arise, and the question what a reasonably prudent person would do for his own safety under the circumstances must be left to the jury as one of fact.' In *Partlow* v. *Illinois Central Railroad Co.* 150 Ill. 321, the court say: 'It has often been said by this and other courts that it is the duty of a person approaching a railroad crossing to look and listen before attempting to cross, and that a person failing to observe this precaution is guilty of negligence; but when the statement has been made, the court, as a general rule, was discussing a question of fact, and in such case the statement may be regarded as accurate. But the court cannot say, as a matter of law, that the failure to look and listen is negligence. These facts are proper for the consideration of the jury in determining whether a person has been negli-

182—18

gent, but it cannot be said, as a matter of law, that the failure to observe such acts is negligence,'—citing *Chicago and Northwestern Railway Co.* v. *Dunleavy*, 129 Ill. 132; *Terre Haute and Indianapolis Railroad Co.* v. *Voelker*, id. 540; *Chicago, Milwaukee and St. Paul Railroad Co.* v. *Wilson*, 133 id. 55. It follows, therefore, that the instructions upon this point were properly refused.

"Finding no material error in the record the judgment of the circuit court will be affirmed."

We concur in the conclusion reached by the Appellate Court, and in the views above expressed. Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*