# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

## THE PENNSYLVANIA COMPANY

### *v.*

## THOMAS A. REIDY.

*Opinion filed June 19, 1902—Rehearing denied October 8, 1902.*

1. RAILROADS—*duty where a train of another company is discharging passengers in street.* A railroad company having tracks in a street and actual knowledge that another company had tracks there and used a narrow space between the tracks of the two companies to discharge passengers, is charged with the duty of operating its trains at that place with due regard for the safety of passengers alighting from a train of the other company.

2. TRIAL—*when question of negligence is for the jury.* Whether the engineer of defendant's train was negligent is properly left to the jury, under evidence that he saw passengers alighting from the train of another company upon a narrow platform in the street between the tracks of the two companies; that he knew their only exit was across the track on which he was running; that he saw the plaintiff approaching the track but did not slacken his speed, which was from fifteen to thirty miles an hour, nor apply the brake until after the plaintiff was struck.

3. INSTRUCTIONS—*when instruction is properly refused.* An instruction holding that defendant's engineer had a right to presume that those in charge of the train of another company would observe

the custom for suburban trains to avoid stopping at a station to unload passengers when a through train was about to arrive, is properly refused where the engineer testified that he knew the train had stopped and that passengers were alighting.

*Pennsylvania Co.* v. *Reidy*, 99 Ill. App. 477, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

GEORGE WILLARD, for appellant.

SETH F. CREWS, and RALPH CREWS, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

On the 8th day of February, 1892,—now more than ten years ago,—the appellee was run upon and struck by an engine which was drawing one of appellant's passenger trains southward on and along Stewart avenue, in the city of Chicago. He brought this an action on the case to recover damages because of the injuries so sustained. The case has been twice tried in the circuit court of Cook county. The appellee prevailed on both hearings. A judgment in his favor in the sum of $12,000, entered on the first hearing, was reversed by the Appellate Court for errors in matter of procedure. Upon a second hearing judgment was awarded the appellee in the sum of $10,000. This is an appeal from the judgment of the Appellate Court for the First District affirming the last mentioned judgment of the circuit court of Cook county.

The errors assigned render necessary some reference to the facts. At the time the appellee was injured the appellant company maintained two railroad tracks in Stewart avenue, in the city of Chicago, located near each other, on the easterly side of the avenue. The Western Indiana Railroad Company maintained two tracks on the westerly side of said Stewart avenue. The Chicago and Eastern Illinois Railroad Company operated its passen-

ger trains on the more easterly track of said Western
Indiana Railroad Company, in said avenue. Thirty-first
street runs east and west, and intersects Stewart avenue
at right angles. In the center of the avenue at the cross-
ing of said Thirty-first street there was a space of about
twenty feet between the more easterly track of the West-
ern Indiana Railroad Company and the more westerly
track of the appellant company. At the south side of
Thirty-first street, and immediately adjoining the east-
erly track of the Western Indiana Railroad Company, a
small and narrow platform had been erected for the use
of passengers in entering or alighting from the trains
passing along the avenue on that track. The platform
was about nine feet long, two and one-half feet wide and
about fifteen inches high. It could only accommodate
the passengers who were attempting to enter or alight
from the rear end of one car and the forward end of an-
other. At the hour of twenty minutes after five o'clock
on the evening of February 8, 1892, a passenger train
of the Chicago and Eastern Illinois Railroad Company,
which was northward bound on the easterly of the tracks
maintained by the Western Indiana Railroad Company on
said Stewart avenue, stopped at the crossing of Thirty-
first street. The appellee was a passenger on the train
and alighted at or near the south line of Thirty-first
street and at once proceeded to pass eastwardly along
the south side of Thirty-first street, across the tracks of
the appellant company in the avenue. A passenger train
of the appellant company was then approaching the
crossing from the north on the westerly of appellant's
tracks in Stewart avenue, and the engine drawing said
train ran upon and struck appellee as he was crossing
the track on which it was moving. He received serious
injuries, making necessary the amputation of his left leg.

It is contended the court should have directed a per-
emptory verdict for the appellant on two grounds: First,
that the evidence did not tend to show the appellee was

in the exercise of ordinary care for his own safety; and second, that the evidence did not tend to show the servants of the appellant company in charge of the engine and train were guilty of any act of negligence which contributed to the injury. We think both of these contentions were properly regarded by the trial judge as questions of fact for the determination of the jury.

The appellee, together with other passengers, alighted from the train in a narrow space in the avenue, with railroad tracks on either side. He was going to his home, one block east of Stewart avenue, and it was necessary he should cross over the tracks of appellant railway in the avenue. Moreover, the train on which he had arrived stood across Thirty-first street, thus closing the passageway to the westward. He testified that he looked to the north and the south but did not see the train. It was "at sundown," or "at dusk," as stated by some of the witnesses. At the north side of Thirty-first street, in the space in Stewart avenue not occupied by the railroad tracks, and between the tracks, stood a switchman's house or "shanty," and several persons were standing in the same space, and thus, to some extent, his view of the approaching train was obstructed. Under the circumstances he might, without any imputation of negligence, govern his actions, to some extent, in reliance upon the supposition that a train would not be driven at a high rate of speed along the appellant's tracks in the avenue and across Thirty-first street at a time when the Chicago and Eastern Illinois Railroad Company was unloading passengers from the coaches of its train into the narrow space in the avenue between the two sets of tracks. It was not reasonably to be apprehended by him that the railroad companies so occupying a public street with their tracks and trains, and using the space at a street crossing for the purpose of receiving and discharging passengers, would operate their trains along the streets and across that street intersection, where passengers

were alighting from a train, without due regard for the
safety of the persons so known to be in the narrow space
at the street intersection. The fact the gates were down
at the street crossing had little, if any, weight in deter-
mining the propriety of the action of the appellee. If he
had known the gates were closed he would most prob-
ably have supposed they had been shut down to warn
others on the street of the coming in of the train on
which he was a passenger. That the gates were shut
conveyed no warning to him. The trial court correctly
refused to declare, as matter of law, that under the cir-
cumstances the appellee should be declared guilty of
failure to exercise ordinary care for his own safety.

The evidence also made it the duty of the court to
submit to the jury, as a question of fact, whether the
servants of the appellant company in charge of its train
were guilty of negligence. The engineer who was con-
trolling the locomotive drawing the appellant's train
testified that he knew that the passenger train of the
Chicago and Eastern Illinois Railroad Company was due
to stop at the crossing of Thirty-first street at the time
in question; that he saw that train approaching the
crossing; that he afterwards saw passengers getting off
of the Eastern Illinois train into the space in the avenue
between the tracks, and the evidence showed that with-
out slackening the speed of his train he drove his engine
and train over the crossing at a speed of from fifteen to
thirty miles per hour, without any regard to the fact that
passengers on the train of the Chicago and Eastern Illi-
nois Railroad Company had been discharged from a train
of that company into the narrow space in the avenue,
between the track on which his train was moving and
the track where stood the train from which the appellee
had alighted. He knew that passengers were in that
space and that the Chicago and Eastern Illinois train
stood across the street and obstructed their passage to
the westward, and that the only exit for such passengers

was eastward across the track on which his train was moving. The law required the exercise of ordinary care on the part of the company, and ordinary care is that degree of care which is commensurate with the hazards of the situation. (2 Thompson on Law of Negligence, sec. 1846.) The engineer admitted that he saw the appellee approaching the track on which his train was moving; that he realized appellee was in danger or would at once become endangered by his train, and that he did not then apply the brake or shut off the steam, but stepped to the other side of the cab to see if appellee was hit, and then came back and applied the brake. The evidence tended to disclose the want of ordinary care on the part of the engineer for the safety of the appellee.

It is complained the court permitted the appellee to introduce in evidence rule No. 114 adopted by the appellant company. The rule is as follows: "A train approaching a station where a passenger train is receiving or discharging passengers must be stopped before reaching the passenger train." The ground of objection to the introduction of the rule is, that it was only intended to be applicable to the appellant's road. The error of admitting this rule in evidence, if any error there was, (as to which we announce no decision,) was obviated by instructions Nos. 9 and 10 given to the jury at the request of the appellant company. These instructions are, in substance, that the rule had no application to the cause, and was not understood by the officers, agents and employees of the company to refer to any other trains or tracks than those of the appellant company. Excluding the rule from consideration, the circumstances and the situation authorized the application of the principle or design of the rule to the case. The lines of the two railroad companies were laid in the same public avenue. Their tracks were so placed in the avenue as to leave but a narrow strip of the avenue, or space, between the tracks. The Chicago and Eastern Illinois Railroad Com-

pany and the Grand Trunk road availed of this space
at the intersection of Thirty-first street as a place for
receiving and discharging passengers to and from their
trains, and this was well known to the appellant com-
pany. That persons who had alighted from trains in this
space would, or at least might, be endangered by the
running of appellant's trains at a high rate of speed on
its tracks across the street intersection was apparent to
the servants of the appellant. The avenue retained its
character as a public highway. The appellant company,
though authorized to lay its tracks on the avenue and
propel its trains on such tracks, had actual knowledge
that the avenue was also occupied by the tracks of other
railway companies, and that such other companies were
using a portion of the avenue as a place for receiving and
discharging passengers, and such knowledge charged it
with the duty of operating its trains with due regard for
the safety of those who, by reason of being passengers
on the trains of the other companies, were brought into
such proximity to its tracks as to make the moving of its
trains on its tracks dangerous to such persons. Speak-
ing of the duty imposed by law upon railway companies
in like state of case, it is well remarked in 2 Thompson
on the Law of Negligence (sec. 1726): "At such places
the railway company is bound to anticipate the presence
of persons on its track and to keep a reasonable lookout
for them, to give signals, * * * and to moderate the
rate of speed of its trains so as to enable them to escape
injury." In *Chicago and Alton Railroad Co.* v. *Kelly,* 182 Ill.
267, it was said in the opinion of the Appellate Court,
which was there adopted as the opinion of this court
(p. 269): "The running of a freight train at a high rate
of speed past a station where a passenger train is receiv-
ing and discharging passengers is so plainly negligent
as not to require comment. It is equally negligent to so
run a freight train just as the passenger train is pulling
into the station, and more especially when the track

upon which the freight train is moving is between the depot and the track on which the passenger train is moving." The principle thus announced is applicable, we think, to the case in hand. It is clear, in view of this, and also in view of the instructions given by the court, before referred to, that the judgment should not be reversed because of admission in evidence of rule No. 114.

There was no error of reversible character in the giving or refusing of instructions. There is no force in the objection that instruction "A" given in behalf of appellee assumes that the appellant company was guilty of negligence. The instruction, in the first paragraph thereof, does no more than to state, as by way of explanation of the issues, that it is alleged in the declaration as a ground of a right to recover damages, that the defendant was negligent, etc. The design of the second clause or paragraph of the instruction is to advise the jury as to the elements necessary to be established by the testimony to warrant a recovery, the third of which is, that it shall be shown, by a preponderance of the evidence, that the plaintiff was injured as the direct and proximate result of the negligence of the appellant company. There is in no part of the instruction any assumption of fact that would invade the province of the jury to determine from the proofs whether the company was guilty of negligence.

The other complaint against this instruction, and also against instruction "B" given in the same behalf, that the duty of the appellee to use due care may have been understood by the jury to be limited to the immediate time and place of the injury, is groundless. There is nothing in the phraseology or structure of the instructions to indicate that the law required no more of the appellee than that he should have used due care to avoid injury after reaching the point of immediate peril. That if his negligence or want of ordinary care brought about his perilous situation he could not recover could not have been misunderstood by the jury.

Instruction No. 15, refused, was but a repetition of instruction No. 2, which was given.

Instruction No. 6 given at the request of the appellant company contained all asked to be given by instruction No. 16, which was refused.

Instruction No. 17, refused, erroneously asked the court to direct the jury to return a verdict for appellant if they should find a fact which was merely evidentiary, and not ultimate, to have been established by the evidence. The court, in instruction No. 13 given at the request of appellant, advised them that the fact referred to in instruction No. 17, if proven, would authorize a verdict for the appellant. Neither of the instructions should have been given. The appellant profited by the error of the court in giving one of them, and cannot be heard to complain that the court refused to reiterate it.

It was not error to refuse to give instruction No. 18 asked by appellant. It was as follows:

"If the jury believe, from the evidence, that at and before the time of the injury in question it was customary for suburban passenger trains to avoid stopping at a station to load or unload passengers at a time when a through passenger train was about to pass such station, then engineer King, of defendant's said train, had a right to believe that the Eastern Illinois train in question would be governed by such custom until he had notice to the contrary."

The engineer admitted, when testifying as a witness, that before his train arrived at Thirty-first street he knew the train of the Chicago and Eastern Illinois Railroad Company had stopped at the street intersection, and saw passengers alighting from the train of that company in the space between the tracks. The instruction entirely ignores this testimony.

There was no objection made, at the time, to remarks of counsel for appellee in his closing address to the jury. No complaint based upon alleged improprieties in that

198—2

address can now be urged. We have, however, in view of the frequency of complaints of this character, examined the record with reference to this objection and find it to be wholly untenable.

The judgment must be and is affirmed.

*Judgment affirmed.*