Jess Hilderbrand, Administrator of the Estate of Darrel Hilderbrand, Deceased, Appellee, v. T. R. Baldwin, Appellant.

Gen. No. 28,488.

1. HIGHWAYS—*contributory negligence of young child as jury question.* In an action for the death of a boy 7 years of age from injuries received when he backed into defendant's truck as it came out of an alley across the sidewalk upon which deceased and other boys were playing, held, that under the evidence it was a question for the jury as to whether he was in the exercise of reasonable care for his own safety.

2. HIGHWAYS—*negligence of truck driver in failing to sound warning as jury question.* Where a driver of a truck proceeded out of an alley without sounding a warning when several boys were playing on the sidewalk and deceased, a boy seven years of age, was walking backward toward the truck within three feet of the alley and the boy was struck by some part of the body of the truck

Hilderbrand v. Baldwin, 233 Ill. App. 278.

and knocked under the rear wheel, it could not be said as matter of law that the driver was not negligent or that a verdict for plaintiff was against the manifest weight of the evidence.

3. HIGHWAYS—*when question whether truck driver sounded warning is material in negligence case.* In an action for the death of a boy seven years of age from injuries received when he backed into defendant's truck as it came out of an alley and was thrown under the rear wheel, where there was evidence tending to show that while the truck was either at a standstill or nearly so at the north side of the sidewalk deceased was in full view of the driver, ahead of the truck and within a few feet of the alley, and was looking in the opposite direction with his attention fixed on other boys and he was walking backward directly into the space over which the truck was about to pass, the question whether the driver gave a warning signal, was very material.

4. HIGHWAYS—*inadmissibility in negligence action of void traffic ordinance.* In an action for negligent death an objection to the admission of an ordinance which made it unlawful for any person to drive a vehicle out of an alley onto a public thoroughfare without first bringing the vehicle to a complete stop should have been sustained on the ground that such ordinance was unreasonable and therefore void.

5. HARMLESS ERRORS—*failure of instruction on damages to limit jury to evidence harmless where verdict not excessive.* In an action for the negligent death of a boy 7 years of age where the instruction given as to damages from loss of expected financial aid from deceased was unobjectionable except for omission of "as shown by the evidence," the judgment will not be disturbed where the verdict could not be said to be excessive.

6. INSTRUCTIONS—*refusal to instruct as to evidentiary effect of unverified pleading not error.* Where a reference was made in instructions given on behalf of plaintiff to the negligence "charged in the plaintiff's declaration" in view of which defendant submitted an instruction to the effect that the declaration was merely the unsworn statement of what the plaintiff alleged and that it neither proved nor tended to prove any allegation contained in it, such instruction might have been proper but it was not error to refuse it.

7. INSTRUCTIONS—*refusal to instruct as to matters covered in other instructions not error.* It was not error to refuse to give instructions requested where the same matters were sufficiently covered in other instructions.

Appeal by defendant from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1923. Judgment reversed and cause remanded. Opinion filed June 11, 1924.

BUSCH, LEESMAN & ROEMER, for appellant.

No appearance for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

By this appeal the defendant, Baldwin, seeks to reverse a judgment for $1,000, recovered by the plaintiff in the circuit court of Cook county, in an action in which the plaintiff, as Administrator of the Estate of his minor son, of about seven years of age, sought to recover damages occasioned by the death of his son, as a result of injuries received when he was knocked down and run over by a truck operated by the defendant's servant, it being alleged that the injuries were occasioned by the servant's negligence in operating the truck. It is the defendant's contention that there is no evidence in the record supporting the verdict and judgment for the plaintiff, and also that the verdict and judgment are against the manifest weight of the evidence. It is also contended that the trial court erred in overruling the defendant's objection to a certain ordinance of the City of Chicago, which was offered and received in evidence on behalf of the plaintiff, and that, further, error was committed in the giving of instructions.

The plaintiff's intestate received his injuries at the entrance of a north and south alley, midway between University Avenue and Woodlawn Avenue, on the north side of 61st Street, in the City of Chicago. There was an apartment building bordering this alley on the east side and fronting on 61st Street, and immediately to the west of the alley there was a vacant lot. The sidewalk at this point was the ordinary concrete walk, 6½ feet wide, and there was a space of about 5 feet between the outer side of the sidewalk and the curb of the street along the north side of 61st Street. The truck in question was traveling south in this alley toward 61st Street, and it either stopped

or came almost to a stop at or about the inside line of the sidewalk. It then started up and proceeded out into 61st Street, turning to the west in that street. The deceased boy, Darrel Hilderbrand, was struck by the body of the truck, some distance back from the front, and this had the effect of twisting or turning him around and knocking him down. He fell in such a position that the back wheel of the truck passed over his body, resulting in the injuries in question which occasioned his death on the following day. Just where the boy was at the time he came into collision with the truck, is the subject of conflicting testimony.

Darrel, with his two brothers, had been playing in the vacant lot to the west of the alley. Four other boys, ranging in age from 12 to 15 years, two of whom testified for the plaintiff and two for the defendant, were playing along the sidewalk, with what are described in the evidence as pushmobiles. These were vehicles which the boys had made themselves, consisting of a board a few feet in length, with parts of a roller skate fastened on the under side of the board, at the two ends, and a box nailed to the upper side of the board. By holding the top of the box with their hands and with one foot on the board the boys propelled themselves along with the other foot. These boys were operating their pushmobiles along the sidewalk on the north side of 61st Street and as they approached the alley from the west, Darrel ran out from the vacant lot to the sidewalk, with one or two old umbrella sticks in his hands and apparently took a position on the sidewalk facing the boys who were approaching him, and waved the umbrella sticks back and forth in the air or on the sidewalk, meaning to block or retard the progress of the boys who were coming on their pushmobiles. In doing so, he was walking backward slowly along the sidewalk as the truck proceeded out of the alley, and he came into collision with the side of the body of the truck, as stated above. The truck was 28 feet in length and approxi-

mately 7 feet in width. The photograph of the truck which appears in the record shows a footboard along the side of the body of the truck, from about the driver's seat to the back end of the truck, some 6. or 8 inches in width, on a level with the floor of the truck body. One witness testified that the overhang of the body of the truck did not exceed 3 or 4 inches beyond the caps on the hubs of the rear wheels.

The first count of the declaration alleged that the deceased was in the exercise of reasonable care for his own safety and that the defendant, by his servant, so grossly and negligently operated the truck that it struck the deceased and inflicted the injuries in question, causing his death. The second count was to the same effect except that it omitted the allegations as to due care on the part of the deceased, alleging instead that the deceased was a minor under the age of seven years. The proof showed that he had passed his seventh birthday two or three weeks before the accident. The third count in the declaration pleaded an ordinance of the City of Chicago requiring a person driving a vehicle out of an alley, to bring it to a complete stop before driving it across a sidewalk, and it then alleged that the truck in question did not come to a complete stop, and as a result, the injuries complained of were inflicted upon the deceased. The defendant filed a plea of the general issue.

Robert Moore, a boy 13 years of age, testified that he was "about six squares of the sidewalk" from the alley at the time the deceased was injured. The evidence showed that these squares were about three or four feet across. This witness further testified that the deceased was about one or two squares from the alley, and further, that as the truck came along from the north, it slowed up to let a street car go by "and then Darrel started walking backwards and just as the truck started up, Darrel was right there on the curb and the body of the truck that extends out over the wheel hit him in the head and knocked him

down and then the back wheel went over him and cut the corner.'' He further testified that the deceased ''did not at any time get off the sidewalk and into the alley before he was struck, and when he was struck he was right there on the corner, part way in the alley. As the truck went out of the alley it struck the curb and went over the curb. The truck ran over a part of the sidewalk as it made the turn.'' The witness was asked about how far it went over the curb as it made the turn and he indicated with his hands, a distance of about 2 feet. This witness further testified that he heard no warning signal before the truck came out of the alley. On cross-examination, he testified that the truck slowed down ''until it was going just a little bit and then started up again,'' but that it did not come to a dead stop before proceeding out of the alley. He was asked whether or not he had not testified at the coroner's inquest, a few days after the occurrence, to the effect that the truck did come to a stop before proceeding across the sidewalk, and he stated that he could not remember whether he testified to that or not; that his memory of the occurrence at that time was better than at the time of the trial and that whatever he said at the time of the coroner's inquest was true. It was later shown that he had so testified at the coroner's inquest. This witness further testified on cross-examination that the curbing along 61st Street at this point was very low, indicating with his hands a height of about 3 inches.

Edward Dorey, a boy of 15 years of age, testified he was about ''three squares'' of the sidewalk away from the deceased when he was struck; that the truck came out of the alley slowly and he heard no warning signal given as it came out or at any time before the deceased was struck; that ''as the truck made a sharp turn the side of the truck stood over the bed of the truck a little bit and hit the back of the boy's head and twisted him around and knocked him under the wheel''; that the deceased was walking backward at

the time and that, with reference to the street, he was on the curbstone and just going into. the alley; that he was walking on the sidewalk and "wasn't into the alley yet"; that as the truck came out of the alley it made a sharp turn toward the west; that he did not know whether any part of the truck ran over the curb—he paid no attention to that. On cross-examination, this witness testified that he and his companions had not reached the point where the deceased was; that the deceased "was standing there, kind of like this" (illustrating), to hold back the witness and his companions and that he "was backing up all the time toward the alley and backed right up until he came in contact with the side of the truck." He further testified that the truck made no noise but "was just running quiet"; that it was coming slowly but did not stop before it crossed over the sidewalk. He stated that he had also testified to this effect at the coroner's inquest. It was shown later that he there testified that the truck had stopped before crossing the sidewalk.

Of the occurrence witnesses for the defendant, Hugh Peebles, a boy of 15 years of age, testified that he and another boy named McCarthy were the nearest to the alley at the time the deceased was struck; that the first thing he saw the deceased doing was that he was walking backward on the sidewalk, with the umbrella sticks in his hands, about 3 feet from the alley; that the witness saw the truck stop at the alley just before it reached the sidewalk; that the driver looked each way to see if any cars were passing; that at this point the deceased stopped still, and that he then took a few more steps into the alley and the truck struck him on the shoulder; that the part of the truck which hit him was back of the cab in which the driver sat; that the deceased had taken about three steps into the alley when he was struck; that the witness and Mc-Carthy called to him to look out, but he did not hear them; that the truck was in the middle of the alley

and in making the turn, it swung straight out first
and then turned and that in turning it did not strike
any part of the curb or run up over the curb. On cross-
examination, this witness testified that he was about
6 or 7 feet from the alley and the deceased was about
3 feet from the alley "and then the truck started
up and then about that time Darrel started to walk
backwards and the truck was north of him. It was
just starting and the driver of the truck kept driving
on south and Darrel kept walking on towards the al-
ley"; that he did not hear any horn blown at any
time; that there was about a two foot overhang on the
body of the truck and this extended over the sidewalk
as the truck drove into the street.

The witness McCarthy, a boy of 12 years of age,
testified that when he first saw the deceased he was
backing up along the sidewalk with the umbrella
sticks in his hands; that as "the truck came out of
the alley it stopped, as a car had just passed, to see
if there were any more coming, and then he started
up and the boy kept backing up, and as he was right
near the truck, Hugh Peebles and I both hollered
'Look out' and he kept on backing up and Hugh
Peebles and I both made a grab for him and the foot-
board of the truck hit him in the head and knocked
him over and he fell under the wheels." There was
a double track street railway along 61st Street, and
this witness testified that when the truck stopped after
the accident, the front wheels of the truck were about
2 feet from the car track, and when it stopped the
first time, it was just so that the cab of the truck,
"was out past the building where he could see the car
tracks both ways"; that when the truck turned the
corner, no part of the wheels touched the curbstone,
the truck traveling in the center of the alley until it
turned, "and when he turned he was about a foot
from the curb"; that when the deceased was struck
he had taken a step or two in the alley. On cross-
examination, this witness testified that at the time

the truck came to a stop just north of the sidewalk, the deceased was about three squares of the sidewalk from the alley; that "Darrel was backing up and then the driver started his truck again and the driver kept on coming south and Darrel kept on backing up" until he was struck. He was asked whether he heard any horn sound at any time before the accident occurred and he answered, "he did make some noise right near the alley, I couldn't say now whether it was a horn or whether it was a whistle that the truck had," but it was one or the other; that he heard the warning signal just "before he stopped he blew his horn, and then he stopped again to see if there were any cars coming, then he went ahead"; that this was before the driver started to cross the sidewalk. He was asked whether or not he had been asked, at the coroner's inquest, whether he heard any whistle and whether he had not answered, "just stopped for the car track," and he answered that he did not remember whether he said that at the coroner's inquest or not. He further testified that the body of the truck extended out over the wheels about 2 feet, and as the truck came out of the alley and across the sidewalk, the wheels were about a foot from the sidewalk. He was asked whether the truck cut across the sidewalk or the curb as it turned into 61st Street and he said he could not say.

The evidence showed that there was a telegraph or telephone pole located at the west side of the alley and a few feet north of the sidewalk, which extended into the alley a little over a foot.

One Weckert was called as a witness for the defendant. He was driving his automobile east on the south side of 61st Street and he testified that he slowed up for this truck as it was coming out of the alley; that he saw the boys on the sidewalk and noticed one of them back into the truck, "in the rear end"; that when he first saw the truck it was coming out of the alley slowly with the front wheels partly out on 61st

Hilderbrand v. Baldwin, 233 Ill. App. 278.

Street proper, having just moved past the parkway. He further testified that the deceased was in the alley at the time he came in contact with the truck; that he would say "he must have been about 3 feet off the sidewalk and into the alley"; and that as the truck came out of the alley, he would say it was in the center of the alley.

Arthur Day, the employee of the defendant, who was driving the truck at the time in question, testified that he came through the alley and came to a stop "just this side of the sidewalk and I looked out to see if there was a car coming; there wasn't any car coming and I started up in first speed, and as I got out into the street a little ways just above the sidewalk a gentleman hollered to me that I knocked down a boy and that is all I know about it. * * * I believe I sounded my horn before I stopped. As I came up there and stopped there was nobody in front of me at all; nobody was near; nobody near the alley, there were only the boys playing on the sidewalk and they had these roller skates. I should judge they were six or seven feet away from me. They were all playing there and I started out; I started up in first speed, that means three miles an hour. At that time I did not see the boy, at any time, moving towards the truck as though to come in contact with it." On cross-examination he testified that he saw four boys playing on the sidewalk "on these roller skates; they were about five or six feet from the edge of the curbstone; they were going backward and forward * * *. After I started my truck I did not notice anybody backing up toward the alley. I was looking ahead of me when I started away. I looked before I pulled out and then I did not look again until after I stopped on the first rail of the street car track. I didn't see any little boy backing up on that sidewalk towards the truck. I wasn't looking that way." He further testified that he blew the horn before he stopped but not when he started up.

Such being the evidence in the record, relating to the occurrence involved, we are of the opinion that it is sufficient to support the verdict and judgment for the plaintiff. Assuming that the deceased was a child who might be guilty of contributory negligence under the law, it was certainly a question for the jury, under all the circumstances as disclosed by the evidence presented to the jury, as to whether he was in the exercise of reasonable care for his own safety, as a matter of fact. We believe also that the question of the negligence of the driver of the defendant's truck, was for the jury to determine, under all the evidence. Clearly it could not be said that he was not negligent as a matter of law. The defendant's own witnesses testified that the deceased was walking along backward within three feet of the alley at a time when the truck was north of him and just starting to cross the sidewalk and that although the deceased kept on walking backward, the truck continued to move out into the street, without any warning signal being given and with nothing to obstruct the view of the driver of the truck. Another witness for the defendant testified that as the deceased was backing up "about three squares from the alley" the driver started up and drove his truck across the sidewalk, and although the deceased "kept on backing up" the driver "kept on coming south," until the deceased and the truck came together. If that is what happened (and it comes from the witnesses for the defendant), it could neither be said that the driver was free from negligence, as a matter of law, nor that the verdict, finding him guilty of negligence, as a matter of fact, was against the manifest weight of the evidence. In our opinion the same would be true if the accident happened in the manner described by one of the witnesses for the plaintiff,—the truck, making a short turn across a part of the curbing, and thus bringing the body of the truck into contact with the deceased, at a time when the latter was walking backward, and from all the

testimony was apparently doing so at the time the driver drove his truck out of the alley and across the sidewalk. For these reasons we are of the opinion that this court would not be justified in disturbing the verdict and judgment for the plaintiff, either for the reason that it was not supported by any evidence or that it was against the manifest weight of the evidence.

It is urged by the defendant that the fact that no horn or other warning signal was sounded at the time of the occurrence in question, if such was the fact, had nothing to do with the case, and cannot be said to have contributed in any way to the injury of the deceased. We are unable to agree with that contention. Counsel has cited in support of this point a number of decisions holding that under the facts there involved the question of whether or not the driver of the vehicle causing the injuries complained of, gave any warning signal of his approach, was immaterial, as it could not be said to have contributed to the accident. We have examined all these cases and find the circumstances, which were before the court in each of them, materially different from those involved here. In *Sullivan v. Smith*, 123 Md. 546, the defendant drove his automobile past a delivery wagon standing at the side of the street, and in the middle of the block. A little girl ran out into the street from behind the wagon and into the path of the automobile, when the latter was so close as to make a collision unavoidable. The court held that there was nothing in the circumstances to suggest to the chauffeur that it was necessary to blow his horn to prevent injury to other persons using the highway. Furthermore, the plaintiff in that case testified that she looked up and down the street but saw nothing coming. In *Provinsal v. Peterson*, 141 Minn. 122, the plaintiff testified that as he was about to cross the street, he looked in both directions and did not see the defendant's automobile approaching, although the court found that it must have been in plaintiff's view at the time and not far away.

It appeared that the plaintiff's eyesight was defective, which doubtless accounted for his walking into the automobile of the defendant, but there was nothing about the plaintiff or about his position or course in the street to suggest his defective vision, or that he was not able to see objects in the direction in which he was looking. In *Bowers v. Colonial Warehouse Co.,* 153 Minn. 425, 190 N. W. 609, an automobile truck, owned by the defendant, stopped at a street intersection, in obedience to a traffic signal, which was set against it, and it later started in obedience to the signal of the traffic policeman. It started up slowly, at a time when no one was in its line of travel, but before the length of the truck had passed the crosswalk, a boy 15 years old, walking across the street with his head turned so that he was looking over one shoulder, came in contact with the truck and was injured. No facts are given in the opinion indicating that the driver of the truck had any notice whatever that the boy either was, or was likely to, get into a place of danger. The evidence of some of the witnesses in the case at bar, to which reference has already been made, tended to show that while the defendant's truck was either at a standstill or nearly so, at the north side of the sidewalk, the deceased, a boy of seven years, was in full view of the chauffeur, ahead of the truck and within a few feet of the alley, and he was looking in the other direction, with his attention fixed on the boys who were approaching him from the west, on the sidewalk on their pushmobiles, and he was walking backward directly into the space over which the truck was about to pass. In that situation we are of the opinion that the question of whether the driver of the truck gave the warning signal, was very material. In support of the argument on this point, the defendant takes the position that the deceased was well over on the sidewalk and away from the path of the truck, and did not come into contact with it until more than half the length of the truck had passed out over the sidewalk, and that

there was therefore no occasion for the chauffeur to give any warning signal. There may be some evidence in the record to support that theory, but if the jury believed that the evidence showed that the situation presented at the time of this occurrence was as stated by other witnesses, we believe the evidence in the record is such as to justify their conclusion, and we are of the opinion that in that situation the giving of a warning signal was very material. One witness testified that the truck was making no noise and was running quietly.

The defendant urges another point however, which, in our opinion, is well taken, namely, that the ordinance which was admitted in evidence, over the defendant's objection, providing that it should be unlawful for any person to drive a vehicle out of an alley onto a public thoroughfare, without bringing the vehicle to a complete stop before driving it across the sidewalk or intersection intercepting the entrance of such alley, should not have been admitted in evidence, because under the authority of *Elie v. Adams Express Company*, 300 Ill. 340, the ordinance was unreasonable in its terms and therefore void. To be valid, such an ordinance must be reasonable. Such a regulation as this ordinance prescribes, would have no basis in reason where an alley led out onto a public thoroughfare at a point where there were no buildings or other structures, contiguous to either the alley or the thoroughfare, so as to obstruct the vision of either the driver of a vehicle proceeding out of the alley, or those passing along the public thoroughfare, either in the roadway or on the sidewalk. It may not reasonably be said that such an ordinance applied to that kind of a locality tends to support the public safety or welfare. As was said by the Supreme Court in the case cited, which involved an ordinance somewhat similar, "In determining what is reasonable much must depend upon the requirements of different localities, the density of the population of the town in which the ordinance has been enacted, and the dan-

gers and evils prevalent therein, and what would be reasonable in one place might be highly unreasonable in another.'' The court there held that ordinances designed to regulate traffic, must make a reasonable classification of the points within the jurisdiction of the municipality where the regulation shall be effective. There might be a reasonable basis for an ordinance which provided that it shall be unlawful to drive a vehicle out of an alley onto a public thoroughfare, without bringing the vehicle to a complete stop, before driving across the sidewalk or other intersection intercepting the entrance to such alley, in all cases where, on either one or both sides of the alley, there is a building or other structure, either contiguous to the alley and the thoroughfare or within a given number of feet of either the alley or the thoroughfare. But, in our opinion, it is not reasonable to specify such a regulation, by ordinance, applicable to all intersections of alleys with thoroughfares, without regard to the surrounding conditions, or to the traffic.

Further complaint is made by the defendant with regard to the ruling of the trial court on instructions. The court instructed the jury that if they should find the issues for the plaintiff, in determining the amount of damages, if any, they might consider ''any financial aid the next of kin could have reasonably expected from the deceased during the period of his life.'' If this instruction had added, ''as shown by the evidence,'' it would have been unobjectionable. *Chicago & Alton R. Co. v. Kelly,* 182 Ill. 267, 272; *Cleveland, Cincinnati, Chicago & St. L. Ry. Co. v. Keenan,* 190 Ill. 217, 220. However, we would not disturb this judgment by reason of the giving of this instruction, in view of the size of the verdict in this case, which, under the theory of liability could certainly not be said to be excessive.

In giving one of the instructions, submitted by the plaintiff, reference was made to the negligence ''charged in the plaintiff's declaration,'' in view of which the defendant submitted an instruction to the

effect that the declaration was merely the unsworn statement of what the plaintiff alleged, and that it neither proved or tended to prove any allegation contained in it, in relation to the case. While the giving of this instruction might have been proper, we are of the opinion that it was not error to refuse it. The defendant contends that the trial court erred in refusing two other instructions, but in our opinion the trial court did not err in that regard, for the matters referred to in those instructions were sufficiently covered in other instructions which the court gave.

For the error in admitting in evidence the ordinance offered by the plaintiff, the judgment of the circuit court is reversed and the cause is remanded.

*Judgment reversed and cause remanded.*

TAYLOR, P. J. and O'CONNOR, J. concur.