LILLIAN CLAWANS, complainant-respondent,

*v.*

ORDWAY BUILDING AND LOAN ASSOCIATION, a corporation,
defendant-appellant.

[Argued October 20th, 1932.   Decided January 31st, 1933.]

*Mr. Ferdinand D. Masucci (Mr. Robert H. McCarter,* of
counsel), for the complainant-respondent.

*Mr. Joseph Susskind,* for the defendant-appellant.

The opinion of the court was delivered by

CASE, J.

The appeal is by the defendant from a decree in the court
of chancery, rendered on the advice of Vice-Chancellor Fal-

lon, directing that a mortgage covering the complainant's property given to, and held by, the defendant, be surrendered, properly endorsed for cancellation.

The complainant had employed Morris W. Shapiro, an attorney-at-law, to repreesnt her in the acquisition of title to the property, consisting of a city lot with a two-story dwelling house thereon, and to execute in his own name, as vendee, the contract of purchase. A contract was accordingly entered into on July 3d, 1928, between Gross, the then owner of the property, and Shapiro, fixing the price of $9,000, payable $1,000 on the execution of the contract and $8,000 on the delivery of deed. Of the amount required for the purchase price complainant paid Shapiro $1,000 a few days after the signing of the contract and $2,000 before the closing date, which was August 3d, 1928. Complainant arranged for the financing of the remaining $6,000 by endorsing for cancellation, before August 3d, 1928, a $10,000 mortgage upon which Shapiro was indebted to her and accepting other security for the remaining debt of $4,000. Shapiro paid Gross the entire purchase price but instead of passing title through himself had the deed made, without complainant's authority or knowledge, to Max Goldberg, a clerk in Shapiro's office. Later Goldberg executed a deed to complainant. When complainant learned of this unauthorized deviation in the passage of title Shapiro explained it upon the ground of his own domestic differences.

Until the time of the execution of the contract of sale between Gross and Shapiro complainant had occupied a portion of the premises as tenant. Thereafter, and before passage of title, complainant assumed the role of owner and besides remaining in physical occupancy of the premises manifested her attitude by several acts easily discoverable by anyone who might seek information at the premises. Amongst these acts were the placing, on a post of the front porch, of a sign painted in black letters, on a white background, reading "Flat to Let, L. Clawans, owner, or call Market 9909" ("Market 9909" being the telephone number of complainant's office), placing a sign with the same matter in the window of the

lower floor, and inscribing the name "Clawans" beneath the doorbell at the front door. A building contractor, under employment by the complainant, was on the grounds making extensive repairs and alterations from sometime in July on through the month of September.

In August of the following year complainant, for the first time, learned of the existence of the mortgage now under litigation. The mortgage was made by Max Goldberg to defendant on August 3d, 1928, covered complainant's premises and secured a loan of $7,000. Complainant immediately filed her bill praying that the mortgage be declared null and void and that it be surrendered duly endorsed for cancellation.

Goldberg, notwithstanding his execution of several documents, had no interest in, and no knowledge of, the transaction in any of its phases. He did not know that title to the premises had been taken in his name or that he had signed an application to the defendant for the loan or that he had executed a mortgage covering the property or that he had deeded the property thereafter to the complainant. He had signed the various papers accomplishing these results in ignorance of their purport, without information as to the subject-matter thereof and merely because he was a clerk in Shapiro's office and Shapiro had placed the papers before him and requested his signature thereto. He was a "dummy" in the transaction.

The defendant company did in fact advance the sum of $6,500 on the security of the bond and mortgage executed by Goldberg, of which amount $6,000 went toward the purchase price under the following circumstances: Shapiro was the attorney of the defendant. His representation to the defendant, accepted by the defendant as true, was that he was the actual purchaser and that Goldberg was taking title in his behalf. Nevertheless, the defendant, knowing that Goldberg had no interest and believing that Shapiro was the person for whose benefit the loan was to be made, employed Shapiro to represent it in the examination of the title and to attend to all the legal business. Defendant even placed the moneys allocated to the mortgage in the hands of Shapiro as the

trustee for the defendant to be paid out by him at his discretion for the loan purposes.

The foregoing, in large part uncontradicted, constitutes the essence of the facts found by the vice-chancellor, who also found that a committee of the defendant's directors had, in company with Shapiro, visited the premises before the loan was granted but that they had not acted with reasonable diligence and that had they so acted the information there observable and ascertainable was such as to manifest clearly to them that the complainant was then the equitable owner of the premises. We consider that these findings have adequate support in the testimony.

Shapiro perpetrated a fraud. Both the complainant and the defendant were innocent of the fraud, but the loss must fall upon one or the other of them. The question is, upon which? We think upon the defendant and for the following reasons:

It is said that the complainant in authorizing Shapiro to contract for title to real estate in his own name made possible the fraud by this faithless attorney. But Shapiro, since convicted of, and sentenced on, other embezzlements, was then of good repute and standing, and we think that criticism may not fairly be leveled at the authority so given. On the other hand, we are doubtful of the propriety of defendant's course in employing Shapiro to act as its attorney, even to the point of passing upon the title and disbursing defendant's funds, in a transaction where, to defendant's knowledge, the interests of the two were opposed. The wisdom of the ages tells us that "no man can serve two masters." In the face of that truism defendant employed Shapiro to serve the defendant in a transaction between the company and Shapiro. In so doing defendant acted contrary to the dictates of common prudence. We apprehend that an attorney who was unswerved by his own clashing purposes and who was not blinded by self-interest to the signs of wrongdoing would have sensed the irregularity of Shapiro's undertaking and his entire lack of equity in the title. Gross, the vendor; Benninger, real estate agent acting for the vendor in the sale; Firsch, attorney for

Gross in the transaction with Shapiro, and Scholder, former owner, whose equity of redemption had recently been foreclosed by Gross and who at or about the time of the transaction was still residing with the complainant on the property, all testified that, notwithstanding the Shapiro contract, they knew that complainant was the real buyer. An inquiry of any of these persons would probably have elicited the truth. Also, we may assume that an attorney who was devoted solely to his client would, on notice that Goldberg, the record owner, was in fact only a figurehead in the title, have made inquiry of Goldberg to ascertain the nature and extent of the latter's holding and in whose interest he was acting; in which event it would have been learned that even Goldberg had been duped into a position of ownership and mortgagorship of which he was entirely ignorant. It is highly improbable that a disinterested attorney could have guided the transaction to completion without obtaining information that would have exposed and frustrated the fraud. Whether or not Shapiro's knowledge was imputable to the defendant, we consider that the defendant, in employing Shapiro, opened the door to the fraud.

In *Wood* v. *Price, 79 N. J. Eq. 620,* Mr. Justice Voorhees said (at *p. 624*) :

"All authorities are agreed that the general rule is that possession of real estate which is actual, open and visible occupation, inconsistent with the title of the apparent owner by the record and not equivocal, occasional or for a temporary or special purpose, is constructive notice to all the world of the rights of the party in possession."

The testimony relating to the complainant's possession, accepted by the trial court as true, was, we think, sufficient to bring that possession within the application of the rule thus stated. It was held by this court in *La Combe* v. *Headley, 91 N. J. Eq. 63,* opinion by the chief-justice, that:

"It is the duty of an intending purchaser of land which is in the possession of a person other than the intending grantor to inquire of the occupant and ascertain the rights under which he holds; and if he does not make such inquiry, he is

chargeable with notice of such facts as the inquiry, if it had been in fact made, would have revealed."

The efficacy of notice by actual possession applies to a person proposing to take a mortgage on the property. *Phelan v. Brady, 119 N. Y. 587; Chicago and A. R. Co. v. Kelly, 182 Ill. 267; 54 N. E. Rep. 979.*

The inquiry required to be made of the occupant must, of course, be made with due diligence; and it was not so made in the instant case. Indeed the visitation of the defendant's representatives at the premises seems to have been directed towards the physical condition of the property and not at all towards the character or significance of the occupancy.

The imprudence of the defendant in entrusting the transaction to Shapiro, and the fact that the defendant is chargeable with notice of complainant's rights lead us to conclude that the decree under review should be affirmed.

*For affirmance*—TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, KAYS, HETFIELD, KERNEY, JJ.   9.

*For reversal*—WELLS, J.   1.